**LUMBERMEN'S MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Rayford J. WRIGHT, Appellee.**

**No. 19070.**

United States Court of Appeals Fifth Circuit.

Sept. 19, 1963.

H. L. Hammett, New Orleans, La., for appellant.

A. V. Pavy, Edward Dubuisson, Opelousas, La., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This case started out in 1947 as a run-of-the-mine tort action. Unfortunately, it developed eccentricities and a

life of its own singularly resistant to routine. It is before this Court for the second time.

In the first proceedings, in 1954, the district judge held that Erie compelled dismissal of the complaint under Article 3519 of the LSA–Civil Code. This article requires dismissal of a suit for want of prosecution for five years. In such case the interruption of prescription by filing suit is considered as having never happened. The plaintiff appealed. We reversed the district court and remanded the case for trial. Wright v. Lumbermen's Mutual Casualty Company, 5 Cir., 1957, 242 F.2d 1; rehearing refused; certiorari denied, 354 U.S. 939, 77 S.Ct. 1397, 1 L.Ed.2d 1536. This time the defendant appeals; after a trial without a jury, the district court awarded the plaintiff damages for personal injuries. During oral argument of the second appeal, two members of this Court expressed doubts as to the correctness of the Court's decision on the first appeal. Counsel for the appellant was astonished at this unexpected good fortune. In the trial below and in his original brief on this appeal he had contended that the plaintiff's suit was prescribed by the one-year limitation for torts established by Article 3536, but he assumed that any question of applying Article 3519 to dismiss the suit was foreclosed, and he was driven therefore to distinguishing his argument on the first appeal from his argument on this appeal. Counsel for the appellee was surprised. He was unprepared to reargue the issue decided in 1957. Counsel for both parties filed supplemental briefs rearguing the points raised on the first appeal and arguing also such issues as the Law of the Case, *res judicata,* and waiver.

There is no doubt that the appellant *is* making the identical contention he made before. At the time suit was filed, the one-year prescription provided in Article 3536 had not run. Filing of the suit interrupted prescription. Unless this Court reversed itself and applied Article 3519, requiring the dismissal of the action and vitiating the interruption, Article 3536 could not be invoked. Under the doctrine of the Law of the Case, we decline to reopen the issue. We affirm the judgment below.

I.

In view of our holding, we consider it appropriate to review in some detail the issues raised in the earlier proceedings.

The plaintiff, Rayford J. Wright, was injured January 6, 1947, while loading asphalt in a truck. A twenty-five-foot length of steel pipe broke loose, struck him on his shoulder, and knocked him from the truck to the ground. March 25, 1948, under the Louisiana Direct Action Statute, LSA–R.S. 22:655, Wright filed a diversity suit against the defendant's assured, an asphalt distributor, alleging that his injury was caused by the negligence of one of the assured's employees. In May a workmen's compensation insurer intervened to present its claim as subrogee for certain payments it had made to the plaintiff. The defendant answered the initial complaint June 2, 1948, and responded to the intervention claim September 13, 1948.

Spiders spun cobwebs around the case for nearly six years. July 8, 1954, the district court on its own motion, applied Fed.R.Civ.P. 41(b) [1] and dismissed the suit, "No forward step having been taken for more than three years and in order to clear its docket". The order of dismissal gave the plaintiff ten days in which to

1. Rule 41(b), in pertinent part, reads:
   "Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this title, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

seek reinstatement. The plaintiff's attorney asked that the suit be reinstated. July 15, 1954, the district judge, apparently satisfied with the plaintiff's explanation,[2] directed the clerk to reinstate the suit. September 14, 1954, the plaintiff requested that the case be placed on the trial calendar for hearing. Seven months later, March 24, 1955, the defendant filed a pleading, termed a "Supplemental Answer", alleging that the cause of action had prescribed under Articles 3519 and 3536 of the LSA–Civil Code.[3] The plaintiff argues that the filing of an answer, under Louisiana law, waives pleas of prescription.[4] The plaintiff contends also that this seven months delay constituted a waiver of the reinstatement of the complaint. April 29, 1955, the defendant filed a motion to dismiss on the same ground urged in its supplemental answer. At that time Article 3519 of the LSA–Civil Code provided:[5]

"Art. 3519. *Abandonment or discontinuance of suit* If the plaintiff in this case, after having made his demand, abandons or discontinues it, the interruption shall be considered as having never happened.

"Whenever the plaintiff having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same."

Thus, Article 3536 [6] provides a prescriptive period for tort actions of one

---

2. Counsel for the defendant explained in his brief in the Court below (in the earlier proceedings) that the reason "the plaintiff did not fix this case for trial before his compensation case became final in the State Court on June 2, 1952, was because he could not reach an agreement with intervenor (plaintiff's workmen's compensation carrier) as to its subrogation claim by which agreement intervenor would make some concession to plaintiff. * * * Such an agreement, however, was reached on November 30, 1954."

3. The "Supplemental Answer" asserted: "That the alleged cause of action and demands of plaintiff as well as intervenor herein are prescribed under the laws of the State of Louisiana and more particularly under Articles 3519 and 3536 of the [LSA] Civil Code of Louisiana inasmuch as plaintiff and intervenor allowed more than five years to elapse without having taken any steps in the prosecution of their demand." The defendant prayed for "judgment in its favor and against plaintiff intervenor rejecting their demand with cost."

4. The motion asks the Court: "To dismiss this suit on the ground that plaintiff and intervenor have allowed more than five years to elapse without having taken any steps in the prosecution of their demands, all as will appear by the attached certified copy of the docket of this suit and hence under the laws of Louisiana (Articles 3516, 3518, 3536 and more particularly Article 3519), this suit should be dismissed." The motion was heard May 23, 1955. August 24, 1955, the plaintiff filed a formal "Reply to Defendant's Supplemental Answer" and an "Opposition to Defendant's Motion to Dismiss Because of Plaintiff's Abandonment of this Suit."

5. The first paragraph of Article 3519 now reads:
"Art. 3519. *Abandonment or discontinuance of suit*
Art. 3519. If the plaintiff in this case, after having made his demand, abandons, voluntarily dismisses, or fails to prosecute it at the trial, the interruption is considered as never having happened. (As amended Acts 1954, No. 615, § 1; Acts 1960, No. 30, § 1.)"
The second paragraph has now been clarified and transferred to the new comprehensive LSA–Code of Procedure as Article 561, which reads:
"Art. 561. *Abandonment in trial and appellate court*
"An action is abandoned when the parties fail to take any steps in its prosecution or defense in the trial court for a period of five years. This provision shall be operative without formal order, but on ex parte motion of any party or other interested person, the trial court shall enter a formal order or dismissal as of the date of its abandonment.
"An appeal is abandoned when the parties fail to take any step in its prosecution or disposition for a period of five years; and the appellate court shall dismiss the appeal summarily."

6. Article 3536, in pertinent part, reads:
"The following actions are also prescribed by one year: * * * and that for damages * * * resulting from offenses or quasi offenses."

year; under Article 3518,[7] filing of suit interrupts prescription, but, under Article 3519 the interruption is vitiated by abandonment of the suit.

After a hearing on the defendant's motion, the district court dismissed the suit. 134 F.Supp. 715. The district judge held that Article 3519 is "one of a series of articles supplementing Article 3536 of the Code which provides a one year prescription for tort action" and as an "integral part of the state statute of limitations" it must be applied by the federal courts in Louisiana under the Erie-York-Ragan doctrine.[8] On appeal, the defendant argued that the decision "involves the integrity and fate of Rule 41(b)" with which Article 3519 is in conflict; that the mandatory application of Article 3519 renders Rule 41(b) nugatory and deprives the district court of control of its docket; that Erie is not applicable because Article 3519 is not a law of prescription, and the Louisiana Supreme Court has "consistently viewed Article 3519 of the Civil Code to be merely a rule of procedure." [9]

This Court reversed the district court and remanded the case for trial on the merits. 242 F.2d 1. Judge Borah, for the Court, held that Erie did not require dismissal of the suit, since Article 3519 is not " 'an integral part of the state statute of limitations' within the meaning of the Guaranty Trust and Ragan cases"; that "a dismissal for want of prosecution does *not* affect the cause of action". The Court found support for this holding in certain cases in which the Louisiana court has said that "a dismissal for want of prosecution does *not* affect the cause of action and con-

stitutes no bar to a subsequent suit on the same cause of action." The Court concluded its opinion with a quotation from Losch v. Greco, 173 La. 223, 136 So. 572, 573:

"[A]bandonment which results as a legal consequence of a plaintiff's failure to take any action in his suit during a period of five years merely bars his right to continue with the prosecution of that suit. It does not prevent his bringing another suit for the same cause of action; but, if he brings another suit for the same cause of action, the question whether his right of action is barred by prescription must be determined as if no suit had been theretofore brought."

At the trial, upon remand, the defendant renewed its plea of prescription under LSA–C.C.Article 3536 but made no renewal or reservation of its contention that the plaintiff had abandoned the case under Article 3519. On this second appeal, the defendant-appellant made no specification of error that the district court erred in not dismissing the suit under Article 3519. Counsel for the appellant started his oral argument by conceding that the decision on the first appeal foreclosed any question that, courtesy of Erie, the suit had been abandoned under Louisiana law.

In his supplemental brief, counsel for the appellant points to the quotation from Losch v. Greco in the Court's first opinion and argues that there is no question about it: "We have a plaintiff prosecuting an action which would be utterly barred by prescription in the State Court". This is undeniably true. If the

---

7. Article 3518 reads:
  "Art. 3518. *Legal Interruption by filing of suit*
  "Art. 3518. A legal interruption takes place, when the possessor has been cited to appear before a court of justice, on account either of the ownership or of the possession; and the prescription is interrupted by such demand, whether the suit has been brought before a court of competent jurisdiction or not."

8. Erie Railroad v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079; and Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.

9. State v. United Dredging Company, 1951, 218 La. 744, 50 So.2d 826.

action had been based on a contract, which is subject to ten years prescription, dismissal for want of prosecution for five years would not necessarily affect the cause of action. But when the action is in tort, and therefore prescribes in one year, Article 3519 would have barred recovery if this Court had sustained the district court's order of dismissal. The appellant argues fervently, therefore, that Article 3519 is such an essential part of the statutory scheme of limitations that it should prevent recovery in federal courts, as it would if the plaintiff's action were in Louisiana courts. The appellees rely on State v. United Dredging Co., 1951, 218 La. 744, 50 So.2d 826, in which the Louisiana Supreme Court described Article 3519 not as a statute of prescription but only as a provision of Louisiana general practice and procedure. The appellant counters with the familiar language from York: "It is therefore immaterial whether statutes of limitation are characterized either as 'substantive' or 'procedural' in State court opinions * * *. [The] intent of [Erie] * * * was to insure that [in diversity cases] * * * the outcome of the litigation in the federal court should be substantially the same * * * as it would be if tried in a State court." 326 U.S. at 109, 65 S.Ct. at 1470, 89 L.Ed. 2079.

As is evident, Article 3519 is in a penumbral area.

## II.

"The doctrine [of the Law of the Case] embodies a salutary rule of practice that when a federal appellate court has established a rule of law for the case at bar it will not, on a successive appeal, depart therefrom in deciding the same issue, except for cogent reasons." 1–A Moore, Federal Practice para. 0.404[10] (2d Ed.). In a number of cases the Supreme Court has announced that the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decid-ed, not a limit to their power". Messinger v. Anderson, 1912, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152. See also Remington v. Central Pacific R. Co., 1905, 198 U.S. 95, 25 S.Ct. 577, 49 L.Ed. 959; Southern R. Co. v. Clift, 1922, 260 U.S. 316, 43 S.Ct. 126, 67 L.Ed. 283; United States v. United States Smelting, etc., Co., 1950, 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750. An important element in the doctrine is the reluctance of courts to reopen a question previously decided. As the Supreme Court said in Insurance Group Committee v. Denver & R. G. W. R. Co., 1947, 329 U.S. 607, 67 S.Ct. 583, 91 L.Ed. 547:

> "While power rests in a federal court that passes an order or decision to change its position on a subsequent review in the same cause, orderly judicial action, except in unusual circumstances, requires it to refuse to permit the relitigation of matters or issues previously determined on a former review."

If we turn to the cases in which courts have declined to apply the doctrine, we find that invariably there are clear and compelling reasons for the court's reversing itself in the same case. Thus, in Messinger v. Anderson, the state supreme court changed the law of wills between two appeals, reaching a result contrary to that reached by the federal court on the first appeal. It has been said that the court would reverse only when the first decision was "clearly erroneous and unsound and works manifest injustice to the parties". United States v. Bollman, 8 Cir., 1936, 81 F.2d 1009, 1010. See Hatch v. Morosco Holding Co., 2 Cir., 1927, 19 F.2d 766; Electrical Research Products v. Gross, 9 Cir., 1941, 120 F.2d 301; United States v. Fullard-Leo, 9 Cir., 1946, 156 F.2d 756.

This Court has recently discussed some of the principles to be considered in applying the doctrine of the Law of the Case, in light of this Court's consisting of nine judges sitting in panels of three. In Lincoln National Life Insurance Co. v. Roosth, 5 Cir., 1962, 306 F.2d 110,

Judge Brown for the Court, in an *en banc* decision pointed out:

"[A] most important consideration is stability in the law—a sort of permanence and sureness in decision apart from the make-up or composition of the particular tribunal so far as the person of the Judges is concerned. That, of course, is a matter of growing concern to Courts such as this one in which, as a multiple Judge tribunal, we sit by statute in panels of not more than three Judges. 28 U.S.C.A. § 46(c). * * We think that in a multi-Judge Court it is most essential that it acquire an institutional stability by which the immediate litigants of any given case, and equally important, the bar who must advise clients or litigants in situations yet to come, will know that in the absence of most compelling circumstances, the decision on identical questions, once made, will not be re-examined and re-decided merely because of a change in the composition of the Court or of the new panel hearing the case." [10]

In addition to recognizing the importance of the matters referred to in Roosth, we have given weight to other factors. In this case the applicability of Article 3519 does not raise a simple Erie question of ascertaining the law of the forum and putting it to the "outcome-determinative test" or the "integral relations" test. Article 3519 is in a twilight zone between substance and procedure; whatever effect it may have on outcome can take place only *after* the suit is dismissed; there is no necessary collision between conflicting policies of the State and the Federal Government. Here there is federal law, Rule 41(b), covering the problem created by a litigant's lack of prosecution of a case.

■ One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power, completely aside from the powers Congress expressly conferred in the Rules. The purpose of the Erie doctrine, even as extended in York and Ragan, was never to bottle up federal courts with "outcome-determinative" and "integral-relations" stoppers—when there are "affirmative countervailing [federal] considerations" and when there is a Congressional mandate (the Rules) supported by constitutional authority. So the Supreme Court seems to say in Byrd v. Blue Ridge Rural Electric Co-op, Inc., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953. This Court has held that there are "countervailing considerations reflecting substantial federal policies" for the admission of evidence under Rule 43(a). Monarch Insurance Company of Ohio v. Spach, 5 Cir., 1960, 281 F.2d 401. See also Dallas County v. Commercial Union Assur. Co., 5 Cir., 1961, 286 F.2d 388. We said in Monarch v. Spach:

"Not the least of these countervailing considerations is the indis-

---

10. In addition, the Court said:
"In more tranquil days and times, an appeal from a second trial would be heard by the same Court as the first appeal. Now, that is highly unlikely, and where it occurs, it is—at least in this Court—due entirely to the laws of chance. That puts a premium on multiple appeals. That is so because, without implying any improper purpose to litigants or their counsel, or acknowledging anything more than, as human beings, Judges will unavoidably have differences in emphasis, approach, or views on close questions in given areas, if the practice is followed for each succeeding panel to arrive at its own decisions, the losing party on the first appeal will naturally strive to bring it back a second, or a third, or a fourth time until all are exhausted. This possibility involves something other than simply more grist for our mill and as to which we should be indifferent. One of the vices is that whether a litigant gets a second, or a third time at bat likewise depends so much on chance, or at least on factors making it most unfair that in one situation a second trial and appeal is available while in another one it is lacking."

pensable necessity that a tribunal, if it is to be an independent court administering law, must have the capacity to regulate the manner by which cases are to be tried and facts are to be presented in the search for the truth of the cause. * * * Investment of this profound power and duty carries with it the capacity, if not the affirmative obligation, to prescribe such rules as will enable the federal district courts to fulfill these constitutional demands without, at the same time, trespassing upon others of equal and fundamental nature." 281 F.2d at 407.

A countervailing consideration "at work here" is that the "federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction". Byrd, 356 U.S. at 537, 78 S.Ct. at 901–902, 2 L.Ed.2d 953. Federal courts should be able to prescribe rules for the administration of the cases to be tried before them. See Iovino v. Waterson, 2 Cir., 1959, 274 F.2d 41. Rule 41 specifically regulates the dismissal of actions. The rule is essentially a matter of federal courts administering the cases before them, and has no necessary relation to a state system of limitations. As long as there is still the breath of life in a suit kept alive by the federal courts, it strikes us as unseemly to allow the state to kill the case. It is a different story when the district judge dismisses an action and it is no longer sheltered within a federal haven.

If we should require Rule 41(b) to yield to Article 3519, the discretionary powers of a federal district court would be seriously curtailed. Article 3519 establishes a mandatory rule that cuts both ways. If an action *must* be dismissed for failure to prosecute for five years, in another suit where the period of failure to prosecute is *less* than five years, the district court would *not* be able to dismiss the suit.

Finally, we have considered that it has been six years since this Court handed down its first decision in the case.

It is fair to assume that the holding is well known to members of the Louisiana bar. A similar case is not likely to recur—we hope.

III.

Judge Edwin F. Hunter, Jr., the district judge, set forth his findings of fact and conclusions of law in a well considered opinion which appears in the record. This Court has carefully reviewed that opinion, the record, and all of the briefs. The Court holds that the trial court committed no reversible error and that the judgment below was not clearly erroneous. Substantial evidence supports the trial court's findings of fact and conclusions of law.