Troy L. TOLSON, Appellant,

v.

Melba Joyce HODGE, Administratrix of the Estate of Arthur Eugene Hodge, Appellee.

Troy L. TOLSON, Appellee,

v.

Melba Joyce HODGE, Administratrix of the Estate of Arthur Eugene Hodge, Appellant.

Nos. 12824, 12825.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1969.

Decided May 8, 1969.

**124**

David M. Watkins, High Point, N. C. (Morgan, Byerly, Post & Keziah, High Point, N. C., on brief), for Troy L. Tolson.

Charles H. McGirt, Lexington, N. C. (Walser, Brinkley, Walser & McGirt, Lexington, N. C., on brief), for Melba Joyce Hodge.

Before SOBELOFF, BOREMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

These appeals present a variety of issues requiring an accommodation between the provisions of the Federal Rules of Civil Procedure and the state law of North Carolina which, by virtue of several of the rules, is made applicable to proceedings in the federal courts. A subsidiary question is the correctness of the entry of a judgment by default against plaintiff on defendant's asserted counterclaim and dismissal of the complaint.

The case arose as a result of an automobile accident in North Carolina between plaintiff and defendant's decedent, Arthur Eugene Hodge, alleged to have occurred on June 12, 1965. Plaintiff filed suit for personal injuries allegedly sustained as a result of the accident in the district court, under its diversity jurisdiction, against defendant, a citizen of the State of Alabama, who was the administratrix of the estate of the decedent, having been appointed by an Alabama court. Service of process was made on defendant, in accordance with N.C.Gen.Stat. § 1–105 (1967 Supp.), which prescribes the procedure for service upon nonresident administrators.[1]

---

1. The pertinent North Carolina statute follows:

"§ 1–105. *Service upon nonresident drivers of motor vehicles and upon the personal representatives of deceased nonresident drivers of motor vehicles.*—The acceptance by a nonresident of the rights and privileges conferred by the laws now or hereafter in force in this State permitting the operation of motor vehicles, as evidenced by the operation of a motor vehicle by such nonresident on the public highways of this State, or at any other place in this State, or by the operation by such nonresident of a motor vehicle on the public highways of this State or

Defendant moved to quash the summons, upon the grounds that service did not comply with the statute, that defendant did not have the capacity to be sued in a federal court in North Carolina, and that N.C.Gen.Stat. § 1–105 was unconstitutional as applied to the circumstances of the particular case.

The motion was denied, and defendant filed an answer and a counterclaim for the wrongful death of defendant's decedent, allegedly as a result of the same accident. Plaintiff failed to file an answer to the counterclaim and, one day after the time for answering had expired, defendant obtained the entry of a default judgment against plaintiff. Within three days thereafter, plaintiff sought leave to file an answer to the counterclaim out of time, but plaintiff's motion was denied. Since defendant formally advised the court that she did not desire the assessment of damages on her wrongful death judgment by default, a final judgment was entered by the district court dismissing plaintiff's cause of action as an adjudication on the merits.

In the consolidated appeals, plaintiff appeals from the denial by the district court of his motion to file a reply to defendant's counterclaim out of time and the entry of a default judgment against him dismissing his complaint on the merits. Plaintiff also appeals the ruling of the district court allowing defendant to assert a counterclaim, contending that defendant lacked the capacity to do so in North Carolina. Defendant, on the other hand, appeals from the order of the district court denying her motion to quash the summons. She contends, alternatively, that N.C.Gen.Stat. § 1–105 is unconstitutional as applied to her, and that if she is sued in North Carolina she must necessarily be afforded an opportunity to assert a counterclaim.

I

Defendant's capacity to be sued in North Carolina is governed by Rule 17 (b), Fed.R.Civ.P., which provides that the capacity of an individual, other than one acting in a representative capacity, to sue or be sued "shall be determined by the law of his domicile" and that in all other cases (of which the instant case is one) capacity to sue or be sued "shall be determined by the law of the state in which the district court is held," with certain exceptions not here pertinent. Rule 4(e), Fed.R.Civ.P., permits service of process upon a party not an inhabitant of or found within the state in which the district court is held in accordance with a statute or rule of court of the state in which the district court is held. We look, therefore, to the law of North Carolina to determine if defendant has capacity to be sued, and the manner in which service of process upon her may be effected.

■ N.C.Gen.Stat. § 1–105 clearly permits nonresident administrators to be sued in that state, in actions "growing out of any accident or collision in which said nonresident may be involved by reason of the operation by him, for him, or under his control or direction, express or implied, of a motor vehicle [anywhere

at any other place in this State, other than as so permitted or regulated, shall be deemed equivalent to the appointment by such nonresident of the Commissioner of Motor Vehicles, or his successor in office, to be his true and lawful attorney *and the attorney of his executor or administrator, upon whom may be served all summonses or other lawful process in any action or proceeding against him or his executor or administrator*, growing out of any accident or collision in which said nonresident may be involved by reason of the operation by him, for him, or un-

der his control or direction, express or implied, of a motor vehicle on such public highways of this State, or at any other place in this State, and said acceptance or operation shall be a signification of his agreement that any such process *against him or his executor or administrator shall be of the same legal force and validity as if served on him personally, or on his executor or administrator.* * * * *" (emphasis supplied.) The omitted material relates to the procedural steps for effecting service of process.

within the state]." [2] North Carolina's original substituted service on nonresident motorists statute, enacted in 1929, was amended in 1953 to permit service upon the personal representatives of deceased nonresident drivers of motor vehicles, and in Franklin v. Standard Cellulose Products, 261 N.C. 626, 135 S.E.2d 655, 658 (1964), the North Carolina Supreme Court specifically stated that "the authorization of such an action [against nonresident administrators] and service of process therein was the only purpose and significant effect of the 1953 amendment." In light of Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), and its progeny, no contention could be sustained, and none is urged in the instant case, that this statute as originally enacted is invalid on its face. Since the amendment, we have had occasion to uphold its constitutionality in other contexts. Davis v. St. Paul-Mercury Indemnity Company, 294 F.2d 641 (4 Cir. 1961). And the overwhelming weight of authority sustains the assertion of jurisdiction over personal representatives of nonresident motorists.[3]

While North Carolina, by virtue of § 1–105, permits a suit *against* the nonresident administrator of a motorist who became involved in an auto accident in North Carolina, nonresident administrators are otherwise held to lack the capacity to sue or be sued. Brauff v. Commissioner of Revenue, 251 N.C. 452, 111 S.E.2d 620 (1959); Cannon v. Cannon, 228 N.C. 211, 45 S.E.2d 34 (1947); Monfils v. Hazlewood, 218 N.C. 215, 10 S.E.2d 673 (1940). This rule, defendant asserts, renders § 1–105 invalid as applied to her since she could not sue in North Carolina and, arguably, would lack capacity to assert a counterclaim, although she may be sued.[4]

■ The argument that the lack of capacity to initiate suit, while having capacity to be sued, renders a statute, like § 1–105, "grossly unfair," was specifically rejected in Parrott v. Whisler, 313 F.2d 245 (6 Cir. 1963), a case in which a nonresident administrator was sued, and which held that capacity to be sued was a legitimate extension of the doctrine of Hess v. Pawloski, *supra*. We agree with and rely on that authority. We do not consider the further argument not reached in *Parrott*, that capacity to sue but lack of capacity to assert a counterclaim would render § 1–105 invalid, because, as we subsequently hold, the district court correctly decided that defendant could assert a counterclaim in this case.

■ We perceive no merit in defendant's argument that there was any invalidity in the service of process on her. It is true that the return on the first summons, dated September 28, 1967, recites merely that a copy was left with Miss Becky Watkins, process agent for the Commissioner of Motor Vehicles, instead of reciting that service upon defendant was effected by leaving a copy with the Commissioner of Motor Vehicles; but if the initial service failed to comply with § 1–105, the procedural error was corrected when another summons, dated October 27, 1967, was served and returned as having been served on defendant by leaving a copy with the Commissioner of Motor Vehicles as process agent for defendant.

2. For the pertinent portions of the full text, see n. 1.

3. *E. g.*, Parrott v. Whisler, 313 F.2d 245 (6 Cir. 1963); Feinsinger v. Bard, 195 F.2d 45 (7 Cir. 1952); Peterson v. Wade, 222 Ga. 805, 152 S.E.2d 745 (1966); Toczko v. Armentano, 341 Mass. 474, 170 N.E.2d 703 (1960); Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876, 18 A.L.R. 2d 537 (1950); Plopa v. DuPre, 327 Mich. 660, 42 N.W.2d 777 (1950).

4. The only authority of which we are aware which indicates that North Carolina would permit a counterclaim in the instant circumstances is Franklin v. Standard Cellulose Products, 261 N.C. 626, 135 S.E.2d 655, 659 (1964), in which Justice Higgins, dissenting, stated by dictum "[a] foreign representative brought in to defend must necessarily have the right to counterclaim." Since this can hardly be treated as an authoritative determination of North Carolina law, we assume, for the purpose of deciding the issues in this case, that North Carolina would not permit defendant's counterclaim.

## II

Whether, in the instant case, defendant may assert a counterclaim depends upon whether her right (or obligation) to do so is governed by Rule 13, relating *inter alia* to counterclaims, alone, or by Rule 17(b), and the law of North Carolina, as we have assumed it to be, as conditions precedent to the application of Rule 13.[5] If Rule 13 alone is applicable, defendant had not only a right but an obligation to assert a counterclaim or else be barred from ever asserting one. Since her cause of action is alleged to have arisen out of the same accident which was the genesis of the plaintiff's claim, and since it does not require the presence of third parties of whom the district court could not acquire jurisdiction, Rule 13(a) literally applies.

We start with the proposition that jurisdiction—both in the sense of diversity of citizenship, together with requisite amount in controversy, and diversity between parties having capacity to sue and be sued—was initially established; and we are mindful of the admonition of the Supreme Court that "[o]ne of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power, completely aside from the powers Congress expressly conferred in the Rules" Hanna v. Plumer, 380 U.S. 460, 472–473, 85 S.Ct.

1136, 1145, 14 L.Ed.2d 8 (1965), quoting, Lumbermen's Mut. Cas. Co. v. Wright, 322 F.2d 759, 764 (5 Cir. 1963). Granted initial jurisdiction, this strong policy of uniformity, and the equally strong policy of Rule 13(a) to prevent a multiplicity of litigation arising out of a single transaction or occurrence except when full justice cannot be done, would be significantly undermined if, after commencement of suit, Rule 13(a) were subordinated to Rule 17(b) and the state rules governing capacity which it incorporates. Sufficient scope is assigned to Rule 17(b) when it is permitted to operate only when suit is initially instituted. But once a district court properly exercises jurisdiction to determine a cause of action, such procedural matters as the assertion of counterclaims should be governed by the specific Federal Rules pertaining thereto without further reference to state law.

Support for our views stems from a number of sources. Hurlburt v. Eno, 17 F.R.D. 230 (D.Vt.1955), decided an analogous point. By statute in Vermont executors were given the power to commence and defend suits, but state law also provided that whenever commissioners were appointed to hear claims against the estate any pending suit should be discontinued. In *Hurlburt*, commissioners were appointed after suit had been instituted in a federal district court. The defendant then moved to dismiss on the theory that Rule 17(b) obligated the court to follow state law and to discon-

5. The pertinent provisions of Rule 17(b) have been stated in the text. To the extent applicable, Rule 13 provides:

"Rule 13.
Counterclaim and Cross-Claim
(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if

(1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

tinue the litigation. Rejecting this contention, the court noted that

"Federal Rule 17(b) only provides that the general capacity to sue or be sued is determined by state law. Under Vermont law, an executor or administrator having been duly appointed by a Probate Court within the state has capacity to commence and defend suits. [Footnote omitted.] *Once it is determined that the executor or administrator has capacity to sue or be sued, state law no longer applies* and the Federal Court has jurisdiction if the prerequisites of diversity exist and the action does not interfere with the general probate of the estate. If Congress had intended to allow the states to limit the jurisdiction of the Federal Courts, it would have so stated in much more explicit terms." 17 F.R.D., at 231–232. (emphasis added.)

In Jones v. Schellenberger, 196 F.2d 852 (7 Cir.), *cert. den.*, 344 U.S. 876, 73 S.Ct. 171, 97 L.Ed. 679 (1952), a nonresident administrator brought suit for an accounting against the defendant. A state statute permitted such suits when no local administrator had been appointed, but also provided that after a local administrator was appointed, he could, upon motion, be substituted for the nonresident administrator. In affirming the denial of a motion by a local administrator to be substituted, the Court held that Federal Rule 25, rather than the state rule of substitution, would control. In commenting upon the interrelation between Rules 17(b) and 25, the Court stated:

"It should be kept in mind that Rule 17(b) relates solely to 'Capacity to Sue or Be Sued', and makes the law of the State controlling only in that respect. Conversely, the rule does not purport to make provision for the substitution of parties. \* \* \*

Our view that Rule 17(b) is not concerned with the right of substitution is strengthened, so we think, by the fact that Rule 25, entitled 'Substitution of Parties', prescribes in detail the cir-

cumstances under which substitution is permissible. It is hardly likely that the rule-makers would have treated the matter of substitution in piecemeal fashion. It is more reasonable to think that they treated the matter of 'Capacity to Sue' and that of 'Substitution' as separate and distinct. The former was covered by Rule 17(b) and the latter by Rule 25.

The Rules of Civil Procedure are designed to prescribe the procedure in Federal courts. The question of substitution is procedural, recognized by the rules as such, and not controlled or governed by local law. Particularly is this so in the absence of a specific requirement to that effect and, as we have shown, there is no such requirement in Rule 17(b), relied upon by appellant." 196 F.2d at 854–855. See also, Messner v. Wyte, 33 F.R.D. 288 (S.D.N.Y.1963).

Pertinent also are Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed. 2d 945 (1964), and the recent decision of Farrell v. Wyatt, 408 F.2d 662 (2 Cir. 1969), which applied *Van Dusen*. In *Van Dusen* the Court was concerned with the interpretation of 28 U.S.C.A. § 1404 (a) which authorizes the transfer of a civil action, for the convenience of the parties and witnesses, in the interest of justice, to any other district "where it might have been brought." Raised in the appeal were questions of whether the capacity of fiduciaries to sue and, generally, whether the provisions of Rule 17(b) that the capacity of persons acting in a representative capacity shall be determined by the law of the state "in which the district court is held" were to be determined by the law, federal and state respectively, of the transferor or transferee state. In both instances the law of the transferor state was held determinative. In *Farrell*, this interpretation of § 1404(a) was applied to permit transfer of actions by New York administrators to North Carolina where the plaintiff administrators could not have initially sued under the North Carolina cases we have cited.

Significantly, § 1404(a) represents a strong public policy, in appropriate cases, to serve the ends of justice by serving the convenience, time and energy of litigants and witnesses and reducing the expense of litigation. Albeit by interpretation of § 1404(a), these considerations were deemed to prevail over the technicalities of Rule 17, once the requisites of Rule 17 were found initially to have been met. The course of decision there, and the other decisions we have cited, chart the path we follow in the question of the interrelation of Rule 17 and Rule 13 now before us. We hold that once Rule 17(b) has been satisfied in the initial filing of the complaint, Rule 13 is operative without further reference to Rule 17(b).

## III

Having concluded that defendant was amenable to suit in the district court, that service upon defendant was in compliance with law and that defendant properly was permitted to plead her counterclaim, we turn, next, to the district court's disposition of the counterclaim. The district judge granted a judgment by default on the counterclaim and denied plaintiff's motion to permit the filing of an answer out of time. The chronology of events follows:

On March 12, 1968, defendant's counterclaim was served upon plaintiff's attorney. This attorney had been privately retained by plaintiff without any regard as to whom plaintiff's insurer would select to represent plaintiff if it were called upon to perform its covenant to defend. On March 18, plaintiff's counsel, who practices in High Point, North Carolina, communicated with plaintiff's insurance company, the principal office of which is in Raleigh, North Carolina, requesting advice as to who should handle the counterclaim. On March 22, plaintiff's attorney was asked to forward all of the pleadings to plaintiff's insurer. The pleadings were mailed on March 26. Subsequently, they were mailed by the insurance company to another attorney, whom it selected to defend its insured. That attorney practices in Salisbury, North Carolina, and he received them on April 5, one day after the time to respond to the counterclaim, as governed by Rules 12(a) and 6(e), had expired. Defendant's attorney was immediately contacted and requested to grant an extension of time to file a response, but his consent was not forthcoming and a default judgment *nisi* was entered by the clerk of the district court on the same day. Three days later, plaintiff filed a motion for leave to file a reply to the counterclaim and, thereafter, defendant filed an application for a final judgment by default, alleging that defendant waived any damages to which she might be entitled by reason of the wrongful death of her decedent. By order of May 24, the district court denied plaintiff's motion to file a reply out of time, noting that the plaintiff sought relief under Rule 55(c), in conjunction with Rule 60 (b).[6] On September 16, the final judgment by default was entered against plaintiff dismissing his cause of action as an adjudication on the merits.

Nothing in the record suggests that plaintiff himself was in any way responsible for the failure to reply to the counterclaim within the time provided by the rules. If there was any neglect, it occurred on the part of either plaintiff's attorney or his insurance company; but rather than neglect, the record is more

---

6. Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60 (b)."

Rule 60(b) provides in part that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence * * *; (3) fraud * * *; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged * * *; or (6) any other reason justifying relief from the operation of the judgment. * * *"

susceptible of the inference that the delay was occasioned by the necessity of plaintiff's advising his insurance company of the filing of the counterclaim and giving it an opportunity to provide him with counsel, in accordance with the terms of his policy, coupled with the fact that plaintiff, the insurance company and his counsel did not all reside in the same city or town. The seriousness of the neglect, if any, was not great, and there is nothing in the record to suggest that defendant suffered any prejudice from the delay, other than giving up the judgment by default to which she thought she was entitled. In this regard we note that plaintiff alleged in his complaint that the sole proximate cause of the accident was defendant's decedent's negligence. If established at trial this would constitute a complete defense to the counterclaim. Thus, one of plaintiff's intended defenses to the counterclaim had already been pleaded; the answer sought to be filed would have repeated it more formally, as well as allege the affirmative defense of release.

■■ It has been held in an extensive line of decisions that Rules 55(c) and 60(b) are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments. *E. g.*, Rooks v. American Brass Co., 263 F.2d 166 (6 Cir. 1959) (per curiam) (reversing denial of relief below); Consolidated Gas & Equipment Co. v. Carver, 257 F.2d 111, 114–115 (10 Cir. 1958). Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits. Hutton v. Fisher, 359 F.2d 913, 916 (3 Cir. 1966) (reversing denial of relief below). A leading authority is Tozer v. Charles A. Krause Milling Co.,

189 F.2d 242, 245–246 (3 Cir. 1951) (reversing denial of relief below), in which the court noted, *inter alia*, that "the interests of justice are best served by a trial on the merits" and that, therefore, it is "proper for the court to consider whether any prejudice will result to plaintiff if the judgment is set aside." More specifically dealing with the problem which faces us is the comment of the Second Circuit Court of Appeals in Radack v. Norwegian American Line Agency, Inc., 318 F.2d 538, 542 (2 Cir. 1963) (reversing denial of relief below): "Rule 60(b) relief acts as a corrective remedy, *mitigating the harsh impact of calendar rules* when a litigant's action is dismissed as a result of *his counsel's neglect*," citing Link v. Wabash Railroad Co., 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). (emphasis added.) See, in addition, Patapoff v. Vollstedt's Inc., 267 F.2d 863 (9 Cir. 1959) (reversing denial of relief below), decreeing relief when a default judgment was entered as a result of erroneous advice of counsel. See also, Lunderville v. Allen, 366 F.2d 445 (2 Cir. 1966) (reversing denial of relief below).

■ We are in agreement with the authorities which we have cited, and to us they indicate that the shortness of the delay involved, the absence of gross neglect on the part of the plaintiff, the lack of prejudice to defendant, and the assertion of what may be a meritorious defense, collectively establish that there was an abuse of discretion on the part of the district judge in not relieving plaintiff of the default judgment and in permitting a response to the counterclaim out of time. Under all the circumstances, the interests of justice will best be served by a trial on the merits.[7]

7. Defendant argues that we perform a futile act in ordering the default judgment to be stricken. The argument is that plaintiff sought to set up as a defense to the counterclaim a release signed by defendant which discharges the plaintiff and his insurance company from all liability for the accident. Pleading of this release would, so the argument goes, cause the dismissal of plaintiff's entire cause of action under North Carolina law. Keith v. Glenn, 262 N.C. 284, 136 S.E.2d 665 (1964). Without intimating a view concerning the accuracy of this statement of state law, we note that, in a motion seeking leave to amend its proposed response to the counterclaim, plaintiff has abandoned the assertion of

Chapman v. Henry A. Dreer, Inc., 14 F.R.D. 218, 219 (E.D.Pa.1953).

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

the release as a defense to the counterclaim, and now asserts as a defense only the contention that the negligence of de-

fendant's decedent was the sole proximate cause of the collision.