**KITCHEN & KUTCHIN, INC.**
vs.
**JARRY ELECTRONICS, LTD.**
& another[1]

District Court Department
Appellate Division, Northern District
Trial Court of the
Commonwealth of Massachusetts

**April 28, 1980**

[1]Digital Equipment Corporation, trustee.

Henry Gesmer for the plaintiff.
Richard L. Dahlen for the defendant.

Present: Cowdrey, P.J., Feloney & Zoll, JJ.

ZOLL, J. This is an action in contract. The plaintiff, Kitchen & Kutchin, Inc., seeks to recover $26,133.25 with interest and costs from the defendant, Jarry Electronics, Ltd. The amount claimed represents commissions allegedly earned by the plaintiff while acting as a manufacturer's representative for the defendant. The defendant was served only through the State Secretary, and did not answer. Judgment by default was entered on December 21, 1977.

The plaintiff had also, on November 9, 1977, obtained an order allowing an ex parte attachment on trustee process 'against a debtor of the defendant, Digital Equipment Corporation. That trustee defendant filed an answer on November 18, 1977, admitting that it had in its possession $26,133.25 owed to the defendant, and stating that it would hold these funds until further order of the court. On January 11, 1978, execution issued against the trustee defendant in the amount of $26,133.25; payment in satisfaction of the execution was received by plaintiff on January 18, 1978; and the execution was returned to court marked "Satisfied in Full" on February 3, 1978.

On January 12, 1978, the claimants, Ontario Development Corporation and the Clarkson Company Limited, filed a special appearance in the action and moved for, inter alia, orders vacating the default judgment[2] against the defendant and determining title to the funds in the hands of the trustee defendant. The special appearance and the motion to determine title were made pursuant to G.L. c. 246, s. 33. The motion to vacate the default judgment was brought pursuant to Rule 60(b) of the Dist./Mun. Cts. R. Civ. P. The claimants alleged that they held security interests in the funds in question pursuant to G.L. c. 106, ss. 9-102 and 9-106 and that their security interests had been perfected under G.L. c. 106, s. 9-103(5) prior to the plaintiff's "attachment lien."

On January 12, 1978 the claimants also filed a motion "to supercede or stay execution." The claimants did not prosecute this motion, and the court took no action thereon because of a stipulation filed January 18, 1978. Said stipulation by the plaintiff and the claimants provided that the funds, a sum equal to the amount received by the plaintiff from the trustee under the execution, had been

---

[2]Such a motion is now properly entitled a motion for relief from judgment. It is referred to throughout the report, however, as a mot' ı to vacate judgment.

deposited with the clerk "pending disposition thereof by the court in this action." The plaintiff thereupon moved, on January 20, 1978, to "invoke and apply" G.L. c. 181, s. 9,[3] thereby "to debar Jarry and one Ontario Development Corporation and one Clarkson Company, Ltd., from this action and any other action concerned with the subject matter of this action."

All evidence in this case was introduced by affidavit. With respect to the plaintiff's motion under G.L. c. 181, s. 9 regarding registration of foreign corporations, the plaintiff introduced evidence through the affidavit of its president, tending to show that:

"1. From October 5, 1972 until September 16, 1977, Kitchen & Kutchin, Inc. ('K&K'), of Lexington, Massachusetts, acted as the factory representative in Massachusetts for Jarry Electronics, Ltd. ('Jarry'). Orders were taken by K&K and shipments were made into Massachusetts by Jarry.

"2. In the opinion of K&K's president, Jarry's Massachusetts place of business was K&K's office, provided rent-free, 'which meant Jarry' to Massachusetts customers.

"3. During the period October 5, 1972 until September 16, 1977, engineering and management personnel from Jarry came to Massachusetts periodically to work with Massachusetts purchasers of Jarry's equipment at those customers' facilities.

"4. On September 16, 1977 K&K terminated its representation of Jarry in Massachusetts."

Also with respect to the plaintiff's motion under G.L. c. 181, s. 9, the claimants introduced evidence, through their affidavits, tending to show that:

"1. Jarry is an Ontario Corporation with its offices, all its books and records and its principal places of business located at 305 Laurier Street, Hawkesbury, Ontario, Canada.

"2. On September 22, 1977 Jarry was served with notice that The Clarkson Company Limited ('Clarkson') had been appointed by Ontario Development Corporation ('Ontario') to take possession of Jarry's assets pursuant to certain debentures, and Clarkson has since taken possession of Jarry's assets for disbursement to creditors.

"3. Ontario is an entity of the Government of the Province of Ontario. It is engaged in no business activities in Massachusetts other than its appearance as a claimant in this action."

The claimants introduced affidavits, bearing upon the claimants' claims that they hold title to the funds formerly held by Digital as accounts payable until trusteed, which tended to show that:

"1. On July 11, 1977 Jarry executed a specific assignment, to Ontario, of certain of its accounts receivable, including an account of $35,000.00 owed by Digital.

"2. On July 29, 1977 Ontario sent to Digital a formal written notice of the aforesaid assignment.

"3. Said notice was received by Digital on August 5, 1977.

"4. On June 26, 1972 and December 5, 1973 Jarry executed debentures in favor of Ontario, to secure loans in the amounts of $140,000.00 and $200,000.00. These debentures each provided, in identical terms, that:

"As security for the payment of the principal and interest and for the performance of the obligations of the Company (i.e., Jarry) hereunder, the Company hereby grants, mortgages, sells, bargains, assigns and charges

---

[3]Said section applied to foreign corporations doing business in Massachusetts. It provides in regard to any such corporation that has failed to register with the Secretary of State "no action shall be maintained or recovery had in any of the courts of the Commonwealth ... as long as such failure [to register] continues ... "

unto the Holder (i.e., Ontario) its successors and assigns forever; ... as and by way of a floating charge, all the Company's undertaking, property and assets for the time being, both present and future of whatsoever nature and kind and wheresoever situate . . .'

The debentures each further provided that, upon default, Ontario might 'by writing appoint a Receiver or Receivers of the charged property.'

"5. These debentures also each provided, in identical terms, that, upon default by Jarry or upon Jarry's breach of certain other conditions, Ontario 'shall forthwith be at liberty to take any and all proceedings' for the better securing of itself and for enforcing and obtaining payment of moneys hereby secured;' the debentures each further provided that any 'receiver' appointed thereunder 'shall have, possess and may exercise all powers vested or herein conferred upon (Ontario).'

"6. Ontario filed an affidavit by Ontario's Secretary and legal counsel which was incorporated in the Report.

"7. A copy of the Corporation Security Registration Act, Statutes of Ontario, c. 88, was presented to the court by affidavit and was incorporated in the Report. The two above-mentioned debentures were registered with the Ontario Provincial Ministry of Commerce and Commercial Relations, pursuant to this statute on July 6, 1972 and December 17, 1973, respectively.

"8. On September 20, 1977, Jarry was in default to the total extent of $278,424.17 in payment of its indebtedness to Ontario and on that date Ontario appointed Clarkson as its receiver pursuant to the terms of the aforesaid deb-entures.

"9. The formal appointment by Ontario of Clarkson as receiver stated:

'We hereby appoint you Receiver and Manager of the undertaking, property and assets charged by the Company (i.e. Jarry) in our favour under the Debentures. You are hereby instructed to take possession of such undertaking, property and assets forthwith.'

"10. There was evidence tending to show that Digital was notified by telephone during October, 1977 of the aforesaid receivership and of Ontario's title to the account owed by Digital to Jarry.

"11. All of Jarry's records of its accounts receivable from Digital were maintained by Jarry at its offices in Hawkesbury, Ontario, Canada.

"12. Digital's principal place of business is located in Maynard, Massachusetts.

"13. K&K's attachment on trustee process upon the funds held by Digital was approved on November 9, 1977."

The evidence of the claimants, by affidavit, regarding their motion to vacate the default judgment tended to show that:

"1. The defendant herein, Jarry, was served with process only through the State Secretary, after Jarry had been placed in receivership.

"2. Canadian counsel for Ontario was apprised by telephone message in November, 1977 of the pendency of this action and of the plaintiff's attachment by trustee process of an account receivable owed to Jarry.

"3. Canadian counsel for Ontario averred by affidavit that he took no action to intervene herein, until execution was imminent, because under his interpretation of Ontario law title to the account owed by Digital could not be divested from Ontario unless

Ontario were made a party herein and because Canadian counsel was entirely unfamiliar with the nature and effect of trustee process under Massachusetts law."

On May 9, 1978, the court allowed the plaintiff's motion to invoke and apply G.L. c. 181, s. 9. On May 12, 1978, the court denied the claimants' motion to vacate the default judgment and the claimants' motion to determine title to property pursuant to G.L. c. 246, s. 33.

The claimants requested that the said three rulings be reported. The plaintiff, the claimants and the single justice apparently treated the motions as requests for rulings. Authority for doing so is found in **Morse v. Homer's Inc.,** 295 Mass. 606, 607 (1936). See also, **Federal Deposit Ins. Corp. v. Profile Lounges, Inc.,** Mass. App. Div. Adv. Sh. (1979) 15.

1. The initial question in this case is whether G.L. c. 181, s. 9 applies to bar this or any action by Ontario and Clarkson (hereinafter "claimants") in Massachusetts. General Laws c. 181, s. 9 provides, in relevant part: "[N]o action shall be maintained or recovery had in any of the courts of the commonwealth [by any foreign corporation which fails to register pursuant to G.L. c. 181] . . ." This section penalizes foreign corporations who have failed to register in accordance with the law of the Commonwealth by precluding them from maintaining an action or effecting a recovery in a Massachusetts' court. **Goodwin Bros. Leasing, Inc. v. Nousis,** 373 Mass. 169, 173 (1977).

The intent of the statute is to prevent corporate plaintiffs who have failed to comply with the necessary registration requirements from utilizing Massachusetts' courts to enforce their claims. To apply this penalty provision to unregistered foreign corporate defendants could result in the deprivation of certain constitutional guarantees. The Appellate Division, in interpreting s. 9, has noted that "while adherence to the laws of a state may be made a prerequisite to the right to sue in courts of the state, the constitutional rights or due process guarantees of any defendant cannot be abrogated in the process."

**P.C.M., Inc. v. Cambridge Motor Inn,** Mass. App. Div. Adv. Sh. (1978) 239, 248.

The phrase "no action shall be maintained or recovery had" may not be interpreted to bar unregistered foreign corporate defendants from Massachusetts' courts if it would interfere with their constitutional rights. Jarry and the claimants have requested an opportunity to be heard in opposition to the divestiture of their property. A refusal to permit them to appear in court based on a failure to register would result in the ex parte seizure of their property in violation of the due process clause. Therefore, s. 9 cannot bar them from this action.

The trial court's granting of the plaintiff's motion to debar the claimants under G.L. c. 181, s. 9 should be reversed.

2. Having decided that the claimants are not barred from recovery in the courts of this Commonwealth, the next question concerns the denial of their motion to vacate judgment pursuant to Rule 60(b) of the District/Municipal Courts Rules of Civil Procedure. A default judgment was entered in favor of the plaintiff, K&K, on December 21, 1977, and execution against the trustee defendant was issued on January 11, 1978. The claimants entered their appearance on January 12, the day after execution issued, moving for an order to vacate the default judgment. According to the record, the late appearance of the claimants was the result of a mistake of American law by Canadian counsel who was unfamiliar with Massachusetts' trustee process statutes. He believed that under Canadian law Ontario's title to the account could not be divested until Ontario was made a party to the case, an event which had not yet occurred.

Because there are no requests for rulings and the report is presented simply in the form of motions and the rulings thereon, it is not clear from the record precisely why the trial court justice denied the motion to vacate judgment. It may be that he denied the motion to vacate as a matter of law because of his view that the claimants were barred from recovery because their assignor had not registered in the Com-

monwealth. Or, the motion may have been denied as a matter of discretion because the judge believed that excusable neglect had not been shown. Regardless of the basis for the denial of the motion to vacate, we are of the opinion that said motion should be allowed so that the interests of all parties may be served by a trial on the merits.

Rule 60(b)(1) of the Dist./Mun. Cts. R. Civ. P. has its federal counterpart in Fed. R. Civ. P. 60(b)(1). The federal courts which have had occasion to construe this rule have reached divergent results. See C. Wright & A. Miller, Federal Practice and Procedure s. 2858 (1973). Unlike the situation regarding some of the federal rules, however, we are no longer dependent upon the federal interpretation of Rule 60(b)(1) because we now have a Massachusetts case as guidance for determining whether relief should be granted for excusable neglect. Berube v. McKesson Wine & Spirits Co., Mass. App. Ct. (1979),[a] states at[b]:

"An equation for determining when relief should be granted under the rule for excusable neglect attributable to conduct by counsel for a party cannot be stated in categorical terms. The cases have been divided on exactly what neglectful conduct of an attorney will be excusable. In the last analysis, the question whether relief should be granted for excusable neglect is a question which requires a case by case assessment of the circumstances. As a result, we think it is important in reviewing action on motions of this type that the record be measured against a consideration, among other relevant circumstances, of at least the following factors: (1) whether the offending party has acted promptly after entry of judgment to assert his claim for relief therefrom; (2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, that the claim sought to be revived has merit; (3) whether the neglectful conduct occurs before the trial, as opposed to during, or after the trial; (4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether the error is chargeable to the party's legal representative, rather than to the party himself; for 'the courts have been reluctant to attribute to the parties the errors of their legal representatives.' Barber v. Tuberville, 281 F.2d 34, 36 (D.C. Cir. 1954). See also Maki v. New York, N.H. & H.R.R., 293 Mass. 223 (1936)."

In a footnote to the above analysis, at[c] the Court takes care to recognize that there is

"respectable authority for the proposition that negligence of a lawyer should not, except under extraordinary circumstances, be found excusable and that the negligence when it occurs should be attributed to the client... A categorical application of such a philosophy, far from reducing trial congestion, will probably increase it by replacing the dismissed action with a new action for malpractice. As a result several circuits have approached the entire problem of granting relief from judgments with a liberal attitude."

We now consider the criteria outlined in Berube in regard to the facts of this case.

(1) The claimants entered their appearance the day after execution issued and moved at that time for an order to vacate judgment. The offending party has thus "acted promptly" after entry of judgment to assert his claim for relief.

(2) By affidavit, the claimants have alleged perfection of a valid security interest prior to the plaintiff's attachment on trustee process. This appears to be an adequate showing that the claim sought to be revived has merit.

(4) The negligent conduct of claimants'

(3) The negligent conduct of claimants'

[a]Mass. App. Ct. Adv. Sh. (1979) 742.

[b]Mass. App. Ct. Adv. Sh. (1979) 742, 746-747.

[c]Mass. App. Ct. Adv. Sh. (1979) 742, 747-748.

counsel occurred prior to trial.

(4) The neglect, according to the affidavit of Ontario's counsel, was due to his lack of familiarity with Massachusetts' trustee process procedures. The neglect, therefore, would not seem to be the "product of a consciously chosen course of conduct on the part of counsel."

(5) Pursuant to a stipulation by the plaintiff and the claimants, a sum of money equal to the amount received by plaintiff from the trustee under the execution was deposited with the clerk-magistrate of the trial court pending disposition thereof by the court in this action. As was said in **Tozer v. Charles A. Krauze Mining, Co.,** 189 F.2d 242 (3d Cir. 1951), a leading case reversing denial of a petition for relief from judgment under Rule 60(b), at 246: "The record here discloses that there are no intervening equities, and that no special harm would result to plaintiff except some delay in finally realizing satisfaction of its claim, should plaintiff be successful on trial." There has been no prejudice to the other party in the instant case, "other than giving up the judgment by default to which [it] ... thought [it] ... was entitled." **Tolson v. Hodge,** 411 F.2d 123, 130 (4th Cir. 1969), reversing denial of a Federal Rule 60(b) motion.

(6) It appears that this factor, "whether the error is chargeable to the party's legal representative, rather than to the party himself," means that there will be some situations in which even inexcusable neglect of counsel based upon factors one through five will not be attributed to the party. In any event, we hold here that the neglect is excusable. The question of attribution, therefore, need not be reached.

Our conclusion that the neglect of counsel is excusable is based upon our application of the **Berube** factors. It is also influenced by the case of **Dormeyer Co. v. M.J. Sales & Distributing Co.,** 416 F.2d 40 (7th Cir. 1972), in which the attorney, long familiar with New York practice, had followed New York rather than Illinois practice in responding to the complaint. The court held that the trial court had abused its discretion by denying

a motion to vacate under Rule 60(b). The court refused to attribute to the party the error of its legal representative.

In view of the elements considered above, we are of the opinion that the denial of the motion to vacate should be reversed.

It is to be observed that **Berube** was decided after the proceedings both at the motion and appellate state of the case at bar. No question of retroactive application is involved, however, as **Berube** does not represent new law. It is rather a synthesis of existing law and an expression of choice by the Appeals Court as to which line of federal decisions Massachusetts should follow in this area.

3. The third question to be addressed concerns the trial court's denial of the claimants' motion filed pursuant to G.L. c. 246, s. 33 to determine title to property in the hands of the trustee. The plaintiffs objected to said motion based on the claimants' alleged failure to assert their title upon deposition or oral testimony as provided for in s. 33.[4] General Laws c. 246, s. 1 makes applicable to trustee process the rules of court used in connection with the commencement of all personal actions. The court rule which relates to the dissolution of ex parte trustee process, Dist./Mun. Cts. R. Civ. P. 4.2(h), states that "the plaintiff shall have the burden of justifying any finding in the ex parte order which the defendant has challenged by affidavit" (emphasis added). See also Rule 3.26(9) of the Supreme Judicial Court. Clearly the claimants were able to utilize affidavits to assert their claim under G.L. c. 246, s. 33. Therefore, the trial court's denial of said motion should be reversed.

Accordingly, we reverse the granting of the motion to invoke and apply G.L. c.

---

[4]Section 33 provides that the claimant's "allegations shall be tried and determined as provided in Section 17 upon deposition or on oral testimony as the court orders." An examination of the docket entries reveals that the court did not issue any orders relative to the form of proof, and a hearing was never conducted in which oral testimony could have been offered.

181, s. 9, and the denial of the motions to vacate the default judgment and to determine title to property in the hands of the trustee. A trial is to be held.

So ordered.