479 F.2d 489
 Petition of UNITED STATES STEEL CORPORATION, as Owner of the
STEAMSHIP CEDARVILLE, and the Petition of Den Norske
Amerikalinje A/S, as Owner of the M/V TOPDALSFJORD, for
Exoneration From or Limitation of Liability.
Barbara J. FUHRMAN, Administratrix of the Estate of Arthur
J. Fuhrman, Deceased, et al., Claimants-Appellants,
v.
UNITED STATES STEEL CORPORATION and Den Norske Amerikalinje
A/S, Petitioners-Appellees.
UNITED STATES STEEL CORPORATION and Den Norske Amerikalinje
A/S, Cross-Appellants,
v.
Billy R. HOLLEY et al., Cross-Appellees.
 Nos. 72-1667, 72-1668.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 5, 1972.
Decided May 1, 1973.
 
 Joseph Keig, Jr., Chicago, Ill., Lucian Y. Ray, Cleveland, Ohio, for United States Steel Corp. & Den Norske Amerikalinje A/S; Roman T. Keenen, Lucian Y. Ray, Cleveland, Ohio, on brief for United States Steel Corp.; Ray, Robinson, Keenen & Hanninen, Cleveland, Ohio, of counsel; Thomas O. Murphy, Cleveland, Ohio, Edward S. Silber, Chicago, Ill., on brief for Den Norske Amerikalinje A/S; Price, Cushman, Keck & Mahin, Chicago, Ill., Johnson, Branand & Jaeger, Cleveland, Ohio, of counsel.
 Abraham E. Freedman, Philadelphia, Pa., for Barbara J. Fuhrman, Billy R. Holley and others; Martin J. Vigderman, Freedman, Borowsky & Lorry, Philadelphia, Pa., J. Harold Traverse, Cleveland, Ohio, on brief.
 Before PHILLIPS, Chief Judge, and WEICK and PECK, Circuit Judges.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 This admiralty case is making its third appearance before this Court. It arose out of a ship collision in the Straits of Mackinac in May 1965 between ships owned by United States Steel and Den Norske.[1] Claimants are the seven seamen who were allegedly injured and the widows and administratrices of the estates of the three seamen who lost their lives when the bulk steamship Cedarville, owned by United States Steel, sunk following its collision with the Norwegian ship Topdalsfjord, owned by Den Norske. All the decedents and surviving claimants were crewmembers of the Cedarville. The parties shall be referred to as claimants or shipowners, or by their proper names.
 
 
 2
 Both shipowners admitted liability to the seamen involved, leaving open the question of punitive damages against United States Steel and compensatory damages against both shipowners. The issues as to damages were then split. The District Court awarded punitive damages but we reversed on appeal. United States Steel v. Fuhrman, 407 F.2d 1143 (6th Cir. 1969). To resolve the issue of compensatory damages, the District Court appointed two Commissioners to receive evidence and make findings. Five of the wrongful death claims and seven of the personal injury claims were the subject of the District Court proceedings. The District Court confirmed the Commissioners' report and entered judgments in favor of all the claimants in the amounts determined by the Commissioners. On appeal, it was concluded, inter alia, that principles of maritime law governed and loss of consortium and loss of companionship to children were therefore not compensable. Certain psychiatric testimony was found to have been incompetent and the causes were remanded for a reevaluation and further findings on the basis of the record and the principles enunciated in that opinion. United States Steel Corporation v. Lamp, 436 F.2d 1256 (6th Cir. 1970). On remand, the District Court ordered that no further evidence be adduced, but allowed the proffer of the evidence into the record. A recomputation based upon this Court's opinion was prepared and all exceptions and objections thereto were overruled. This action followed and concerns three death claims (two were settled since the previous hearing by this Court) and the seven personal injury claims. The total award for the ten claimants upon this appeal is $763,317.70 as compared to the total award of $1,793,543.00 which was before this Court in the last appeal.[2] Both the shipowners and the claimants have appealed the decision of the District Court. The shipowners concede the propriety of the death awards but appeal the personal injury awards. The claimants appeal all the awards as being inadequate.
 
 
 3
 Since the District Court's implementation of our remand instructions is at issue on this appeal, we shall review at the outset some applicable principles. It is clear that when a case has been remanded, the trial court must upon the remand proceed in accordance with the mandate and law of the case as established by the appellate court. Ex parte Sibbald v. United States, 12 Pet. (37 U.S.) 488, 9 L.Ed. 1167 (1838); 1B Moore's Federal Practice Sec. 0.404 (2d ed. 1965). This is known as the "law of the case" doctrine and operates to preclude reconsideration of identical issues.[3] The basis of the doctrine is that:
 
 
 4
 ". . . 'there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members. [sic]' Roberts v. Cooper, 20 How. [61 U.S.] 467, 481, 15 L.Ed. 969; and it would be impossible for an appellate court to perform its duties satisfactorily and efficiently if a question once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal. Great Western Telegraph, 162 U.S. 339, 344, 16 S.Ct. 850, 40 L.Ed. 991." General American Life Insurance Co. v. Anderson, 156 F.2d 615, 618 (6th Cir. 1946).
 
 
 5
 This doctrine is not, however, recognized as an inexorable command.[4] Directed to a court's good sense so as to relieve a court of rigid adherence to its former decisions[5] the doctrine includes consideration of the sound public policy that litigation be decided and then put to an end.[6] Accordingly, we must find some cogent reason to show the prior ruling is no longer applicable. Lumbermen's Mutual Casualty Co. v. Wright, 322 F.2d 759, 762 (5th Cir. 1963). Such reasons may include substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice. White v. Murtha, 377 F.2d 428, 431-432 (5th Cir. 1968); cf. Trice v. Commercial Union Assurance Co., 397 F.2d 889, 890 (6th Cir. 1968). Appellants do not allege substantially different evidence nor do they claim our controlling authority has since issued contrary decisions. Thus, we consider as appropriate to our review only whether a clearly erroneous decision which would work a manifest injustice has been made.
 
 I. CLAIMANTS' APPEAL (No. 72-1667)
 
 6
 The thrust of the claimants' appeal is that the District Court reduced the awards to "unconscionably inadequate" amounts. Each of the claimants' three alleged errors will be treated separately.
 
 A. Loss of Earning Capacity
 
 7
 First, claimants complain the District Court confused the loss of future earning capacity with the deprivation of past earnings. They argue that, in fixing the loss of earning capacity, the District Court erroneously averaged the past four years' earnings and made this the basis for determining future earning capacity. They claim the District Court should have used the collective bargaining agreement, which covered the jobs held by the claimants, to ascertain the future earnings by projection. Their view is that past earnings should be considered only when there are no other factors to depict an economic horizon. We disagree.
 
 
 8
 We find that the claimants' arguments regarding future earning capacity were impliedly rejected by this Court earlier:
 
 
 9
 "The claimant must first establish his normal annual earning capacity, which, in the absence of evidence of special circumstances indicating an ability to rise beyond his prior level of employment, would consist of a projection of claimant's earnings history, taking into account all available data relevant to wage adjustment." 436 F.2d at 1270 (re personal injury claims).
 
 
 10
 "As we have hereinabove indicated in connection with the personal injury claims, however, the base should be the higher of the year immediately preceding the incident or the average of the four years preceding it." 436 F.2d at 1275 (re death claims).
 
 
 11
 In recomputing the personal injury and death claims, earnings history was selected as the base for determining lost earnings or earning capacity. This of course would be subject to change if the individuals had employment prospects other than their employment at the time of their death or injury. The record does not contain evidence of such prospects and claimants have not suggested otherwise.
 
 
 12
 As for the claimants' argument that the collective bargaining agreement should have been relied upon, this Court previously pointed out that ". . . the documentary evidence in the record in the form of the collective bargaining agreements under which the decedents would have continued to have been employed had they lived"[7] showed an annual wage increase of approximately 1 1/2% per annum. This rate was used by the District Court in their recomputation. Claimants have persistently argued the bargaining agreement reflects a 4-5% increase. This was rejected previously[8] and we must reject it again as unsupported by the agreement.
 
 
 13
 We can only conclude that the prior opinion clearly sets out the procedure to be followed by the District Court in determining the future earnings loss of both the death and the personal injury claims, and that these awards are not clearly erroneous.
 
 B. Psychiatric Testimony
 
 14
 The claimants contend that the District Court erred in not granting a new trial in order for the claimants to introduce testimony upon the remand. In ordering the remand, this Court instructed the District Court ". . . to make . . . [s]uch further findings and reevaluation . . . on the basis only of the evidence herein held to have been properly received and in accordance with the principles herein enunciated." 436 F.2d at 1272[9] (emphasis supplied).
 
 
 15
 Claimants argue that the rule of Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1968), requires that they be permitted to introduce new psychiatric evidence on the issue of the claimants' damages in the District Court.
 
 
 16
 We find no merit to the claimants' argument for several reasons. First, in Byrd v. Blue Ridge, supra, the petitioner sued in the District Court to recover for injuries allegedly caused by respondent's negligence. Respondent asserted as an affirmative defense that petitioner was respondent's employee for purposes of the State's Workmen's Compensation Act and that the Act provided the exclusive remedy. After hearing the respondent's evidence on this issue, the trial judge struck the defense. In accordance with this ruling, the judge did not permit the petitioner to offer evidence on this issue. The Court of Appeals reversed as to the availability of the defense and, without a remand to receive evidence of the petitioner on the issue, made its own determination on the record and directed a judgment for the respondent.
 
 
 17
 The Supreme Court vacated the directed verdict and remanded to the District Court in order that the petitioner could present evidence in his favor on the issue. The stated reason for the remand was that the petitioner's evidence, although irrelevant under the view of the law taken by the District Court, became relevant and necessary under the corrected interpretation of the defense.
 
 
 18
 In the instant case, instead of excluding testimony later found to be admissible, the District Court admitted evidence (the psychiatric testimony) which was later found inadmissible by this Court. Thus, it is clearly distinguishable from the situation where a decision was rendered without the aid of relevant and necessary evidence, as occurred in Byrd. Here, a decision was rendered with the aid of evidence which should not have been before the trial court. The Byrd decision is simply inapposite.
 
 
 19
 Yet, despite Byrd's inapplicability to the instant case, it might be said that the usual remand where inadmissible evidence has been introduced requires the District Court to retry the case. However, that principle does not apply here.
 
 
 20
 This Court previously excluded the testimony of the claimants' psychiatrist on the basis that he was consulted solely to gain qualification as a witness for the claimants; he was not consulted for the purposes of care or treatment.[10] 436 F. 2d at 1263, citing Padgett v. Southern Railway Co., 396 F.2d 303, 308 (6th Cir. 1968).
 
 
 21
 Of course, the testimony of this psychiatrist could not subsequently become legitimatized by a change of his function to "treating psychiatrist" five years after the sinking of the Cedarville.[11] Similarly, the testimony of another "treating psychiatrist" consulted at that late date[12] could have been no more than a sham attempt at circumventing the holding that testimony of a non-treating psychiatrist is inadmissible.
 
 
 22
 We conclude that there was no necessity for the reopening of proofs[13] after the prior appeal and, a fortiori, no such necessity exists at this time. Nor do we find the presence of clear error.
 
 C. The Awards
 
 23
 Lastly, the claimants contend "the awards were reduced to sums which deprive [them] of their lawful damages and are unconscionably inadequate." We will discuss their claims regarding the death and personal injury cases separately.
 
 1. Death Claims
 
 24
 Following the remand as ordered by this Court, the Commissioners recomputed the death awards. For example, they eliminated compensation for the loss of consortium and counsel to the widows; they eliminated the compensation for the loss of guidance and counsel to the adult emancipated children; they reduced the earnings bases in determining earning capacity loss for both the future and the four year period from incident to judgment. As a result, the total awards were substantially reduced from the original awards. The shipowners do not challenge the recomputed awards and have set aside the funds for their payment.
 
 
 25
 Claimants have cited the claim of the Fuhrman estate as being representative of their argument that the recomputed awards should be held invalid for being "unconscionably inadequate." After the original trial, the District Court awarded $338,095 to the Fuhrman estate; on remand, the figure was reduced to $137,801. Claimants argue the award should be $776,400.39.
 
 
 26
 The claimants contest almost every calculation made by the Commissioners. Once again they attack the averaging of historical earnings for the period of four years from the incident to the judgment. They attack the date of judgemnt as being the date the District Court issued its judgment upon the remand and not the date the District Court issued its original judgment. They attack the application of the 1 1/2% annual growth factor and seek a 5% factor. They complain that an award for the value of decedent's services around the house and the widow's loss of counsel and guidance was improperly deleted. Amounts allocated to personal consumption by the decedent are questioned and, allegedly, the District Court has failed to adequately assess and include a long list of economic appendages such as overtime, holiday pay, vacation pay, bonus pay, annual service awards, pension and welfare[14] benefits. Claimants also argue that the earning capacity is the amount of money which a claimant could earn if he worked full time.[15]
 
 
 27
 Although we may agree with the claimants that the Commissioners' efforts throughout this case were less than thorough and meticulous, we do not agree that all their calculations are susceptible to attack. An analysis of the elements of the figures advanced by the claimants demonstrates their vulnerability.
 
 
 28
 Regarding the calculation of Fuhrman's earning capacity loss, the Commissioners first used as a base the 1964 earnings of $5,889.[16] Shipowner United States Steel objected on the basis that Fuhrman's highest earnings ($7,044) occurred not in the year immediately preceding the incident (1964) but rather in 1963. Apparently the shipowners' point is that the year immediately preceding the incident can be used only if it reflected the highest annual earnings of the four year period. It would appear the District Court acceded because an addenda changes the basis of the earning capacity loss to the 1961-64 average earnings of $5,645.
 
 
 29
 Our previous opinion required the District Court to use the higher of two earning periods as a base. The periods are: (1) the year immediately preceding the incident or (2) the average of the four years preceding the incident. 436 F.2d at 1275. A consideration of the year reflecting the highest annual earnings is simply not germane. Therefore, the original recomputation was improperly amended.[17]
 
 
 30
 Also, in the recomputation the Commissioners apparently increased by the annual growth factor the estimated earnings for 1968-69 to obtain a base for future earning capacity loss. The objection to this was sustained by the District Court. The addenda made the correction by using, as the base, the estimated 1968-69 earnings without any increase. Our previous opinion did not instruct on the point and we cannot say that the method used is clearly erroneous. However, we consider these two adjustments regarding selection of a base for computing earning capacity loss as minor.
 
 
 31
 Regarding future losses, the claimants would have the Court compute a base rate of pay and fringe benefits as if they had worked on the ships twelve months per year every year. We reject this contention. The indisputable fact shown by the record is that the shipping business is seasonal; many months of the year there is not shipping at all. Thus, it is not appropriate to look at a monthly base rate of pay and fringe benefits and project the rates to a full working year as the claimants argue.[18]
 
 
 32
 Claimants also include alleged losses that were specifically excluded by this Court in the prior appeal. For example, at page 23 of their brief, the claimants state that even though this Court excluded recovery for loss of Fuhrman's counsel and guidance to his wife, ". . . there is evidence in the record showing that the decedent did counsel and guide his wife as to money matters and other matters affecting their home and lives. . . ." The claimants then urge the addition of $3,000 per year for this item. Previously we rejected this argument on the basis that ". . . there was no evidence . . . [that these services] could 'only be supplied by the service of another for compensation,' much less any showing [the service had] pecuniary value." 436 F.2d at 1277-1278. Claimants have not convinced us that the rejection of these and other alleged losses constitute clear error. We again reject the claims.
 
 
 33
 Finally, the claimants use figures and percentages that they contend are more appropriate than those used by the Commissioners. It is, however, not the function of this Court to decide the more appropriate figure for the losses. Rather, the function is to determine whether the figures used by the District Court below are clearly erroneous. We do not find that level of error to be present.
 
 2. Personal Injury
 
 34
 In the main, claimants' arguments are repetitive. They again complain that earning capacity should not be limited to past earnings, that the psychiatric evidence was improperly deleted, and that the original awards were improperly stricken or reduced upon the remand.
 
 
 35
 For example, claimants argue that the amounts originally awarded for maintenance and cure were improperly stricken and cite Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), as authority.[19] We are satisfied our previous opinion properly resolved this point. See, 436 F.2d 1270-1271. There we found ". . . there is no objective evidence that any of the claimants resumed gainful employment for reasons other than their voluntary determination to do so, nor is there any evidence that any of the claimants made any request for medical attention which was wilfully ignored by United States Steel." 437 F.2d at 1271. Claimants have presented nothing which has not been previously considered or which would warrant a reopening of our prior judgment.II. SHIPOWNERS' APPEAL (No. 72-1668)
 
 
 36
 As stated previously, the shipowners contest only the personal injury awards. The seven individual personal injury awards range in amounts from $14,000 to $92,733, with the aggregate accumulating $352,649.70. Originally, the District Court awarded a total of $997,332, with the individual awards ranging from $82,160 to $251,976. See footnote 2, supra. On this appeal, the shipowners contend the recomputed awards remain excessive and are not justified by the record.[20]
 
 A. Pain and Suffering for the Incident
 
 37
 The shipowners first complain that the awards for pain and suffering experienced during the sinking itself violate this Court's mandate in that the amounts awarded three claimants are exactly the same as the original awards. The failure to alter the awards is inexplicable[21] in view of our previous opinion that ". . . we regard the awards for pain and suffering on the occasion of the sinking as excessive." 436 F.2d at 1266.
 
 
 38
 B. Pain and Suffering from Incident to Judgment
 
 
 39
 Next, the shipowners complain that three claimants were improperly awarded damages for pain and suffering for the four year period from incident to judgment. With respect to these awards, we previously stated:
 
 
 40
 "However, also as in the case of the 'For the May 7th event' awards, the fact remains that although there is some evidence in the record as to the claimants' discomfort for a past period, we conclude the amount of the awards to be excessive. . . ." 436 F.2d at 1266-1267.
 
 
 41
 As in "A" above, these awards did not change upon the remand. There are no additional findings of fact and indeed the basis for the awards remain as elusive as we noted in our previous decision. The failure to follow the mandate of this Court constitutes a flagrant disregard of its specific directions. We have reviewed our previous opinion, 436 F.2d at 1265-1267, and we find the awards indicated in "A" and "B" above to be clearly erroneous.
 
 C. Future Pain and Suffering
 
 42
 The shipowners also attack the award to two claimants for future pain and suffering. In our previous opinion we stated:
 
 
 43
 "The awards for future pain and suffering . . . present a similar picture [to the other claims for pain and suffering]." 436 F.2d at 1267.
 
 
 44
 ". . . the awards to Mulka . . . based solely on the incompetent psychiatric testimony, must fail completely." 436 F.2d at 1267."The awards to the other five claimants must fail in part also since it is clear that they were based in part on the incompetent psychiatric testimony." 436 F.2d at 1267.
 
 
 45
 On the remand the District Court awarded Mulka $525 and reinstated the original award of $17,500 to Przybyla. Again, this disregard of our specific directions violates our mandate. We find these awards to be clearly erroneous.
 
 D. Loss of Life's Pleasures
 
 46
 Two claimants were awarded amounts for the loss of life's pleasures. Despite this Court's statement that ". . . the awards for loss of life's pleasures are so grossly excessive as to be clearly erroneous," 436 F.2d at 1268, three of the awards were exactly the same on recomputation. As stated previously, satisfactory findings of fact are absent. We find the awards clearly erroneous.
 
 E. Loss of Earning Capacity
 
 47
 In addition, four claimants were awarded amounts for their loss of earning capacity. At the outset, we note that our previous opinion set forth specific guidelines for computing such loss. We stated that the first step is to establish the claimants' "normal annual earning capacity." Next, we stated that ". . . the claimant must establish the reduction, if any, in his earning capacity proximately resulting from the injury by showing the existence of some condition which demonstrably limits his opportunities for gainful activity." 436 F.2d at 1270. Again we find there are no findings by the Commissioners and further we find a lack of support in the Commissioners' report for findings. In fact, the record provides evidence that the parties increased their earnings in the years following the incident. There is no evidence to support the contention that earnings would have increased to an even higher level but for the injuries. Yet there were awards of $72,000; $36,000; $29,000; and $18,400.
 
 
 48
 We vacate the awards for the reason that they are unsupported by the evidence in the record. Nowhere do we find evidence that any of these four claimants has had his earning capacity reduced as a proximate result of an injury arising out of the collision. The Commissioners' report, as adopted by the District Court, does not provide any basis for the awards, nor can we. We find the awards to be clearly erroneous.
 
 III. MODIFICATION OF THE AWARDS
 
 49
 Our prior opinion required the District Court, upon the remand, to reevaluate and recompute the awards ". . . in accordance with the principles herein enunciated." 436 F.2d at 1272 and 1280. As indicated above, the District Court has failed in several instances to follow those specific instructions. To specifically instruct the District Court for the second time would seem to be of little value and, accordingly we proceed to modify the awards entered on the remand.
 
 
 50
 There is no question of this Court's inherent ability to modify a district court judgment and enter a final order thereon. As provided in part by 28 U.S.C. Sec. 2106:
 
 
 51
 "The Supreme Court or any other court of appellate jurisdiction may . . . modify . . . any judgment, decree or order of a court lawfully brought before it for review. . . ."
 
 
 52
 However, a question arises relative to the appropriate scope or standard for the modification of the District Court's findings with respect to damages; i. e., whether this Court can independently determine the appropriate amount of damages or whether it is constrained under the "clearly erroneous" standard for review.
 
 
 53
 McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954), settled that question when it stated that "[n]o greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure." 348 U.S. at 20, 75 S.Ct. at 8. Clearly, then, this Court is restricted to the "clearly erroneous" rule.[22]
 
 
 54
 Therefore, in modifying an award entered by the District Court, this Court cannot merely exercise its independent judgment as to the proper damages, but can only modify[23] to that maximum amount of damages which could have been awarded by the district court without constituting reversible error. See, Mitchell v. Evelyn C. Brown, Inc., 310 F.2d 420, 426 (1st Cir. 1962); cf., Traylor v. United States, 396 F.2d 837 (6th Cir. 1968).
 
 IV. THE AWARDS
 
 55
 The compensatory damages to be discussed in this section include "loss of earning capacity," "pain and suffering" and "loss of life's pleasures." By their nature, such items are inherently speculative.
 
 
 56
 The Commissioners assigned a per annum figure to each item of injury and, having made a determination of duration, then multiplied that figure by the individual claimant's life expectancy in the case of those found to be permanently injured and by a determined period of disability as to the others. A lump sum award based on common sense and experience would seem preferable were we the original triers of fact, but particularly since we are modifying only a portion of the awards, we do not choose to change the approach.
 
 
 57
 We have reviewed most if not all reported cases awarding pain and suffering damages resulting from maritime casualties. Among those cases is Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583 (2d Cir. 1961), where a District Court awarded $300 per hour for pain and suffering to survivors of a sunken ship who were adrift in sharkinfested waters for 46-50 hours with no food and water. The Court of Appeals found the $300 rate excessive and reduced the rate to $150 per hour. Additional sums were included for future pain and suffering.
 
 
 58
 In the Petition of the United States, 418 F.2d 264 (1st Cir. 1969), a seaman was washed overboard into water so cold that his arms and legs became numb and paralyzed. The seaman was in the water for some thirty minutes before he was hauled aboard a boat where he then lost consciousness. The Court found that the seaman sustained a severe chronic neurosis as a result of the accident and awarded $10,000 for past and future pain and suffering.
 
 
 59
 In re Sincere Navigation Corp., 329 F.Supp. 652 (D.C.La.1971), concerned, in part, two seamen who were in inner compartments of their ships which began to flood and sink almost immediately after collision. Both men escaped and swam to a buoy where they were rescued some 45 minutes later. One man remained in the hospital for 4 or 5 days. His primary suffering was emotional; his physical injuries were relatively insignificant. The other spent 1 1/2 days in the hospital and was treated for minor cuts and a left shoulder injury. Each was awarded $10,000 for physical and mental pain and suffering.
 
 
 60
 These cases, while obviously in no sense controlling, serve to provide information as to awards which have been made in other jurisdictions on the basis of damages generally similar to those with which we are here concerned. We turn from them to a consideration of the individual claims before us.A. Pain and Suffering
 
 
 61
 MICHAEL J. IDALSKI-Claimant Idalski almost did not get off the ship. As the ship started to capsize to the starboard, Idalski ran to the port lifeboat and tried to get in but the boat was swinging out and, being off balance, he was thrown into the water. He apparently floated on a bumper block for 45 minutes before being pulled up onto a life raft. He found his hands and feet numb. At the hospital he was x-rayed and treated for cuts and abrasions and discharged the same day.[24] Idalski saw a U. S. Public Health doctor three times subsequent to the accident for treatment of his knee and elbow. On June 3, 1965, he resumed sailing aboard a U. S. Steel ship. From the time of his return to work and until the trial, Idalski did not miss a day of work due to an accident related injury nor did he seek medical assistance for any such injury. Claimant's orthopedic expert testified to progressively disabling and pain producing injuries resulting from the accident. The orthopedic expert presenting the shipowners' analysis disputed the findings, although he conceded a shoulder problem and did not dispute claimant's report of pain in the shoulder. During the period from incident to trial, Idalski admitted he saw doctors on at least three occasions for items bearing no relation to the accident and each time failed to mention any effects of the accident.
 
 
 62
 We find the record indicates with reasonable certainty that Idalski incurred pain and suffering on the day of the accident and accordingly we affirm this award of damages to the extent of $8,000. For pain and suffering from the time of incident to date of judgment, we conclude that claimant was reasonably certain to experience pain and suffering from his injuries and accordingly we affirm the award to the extent of $6,000.
 
 
 63
 In this award, as well as the other awards for pain and suffering and loss of life's pleasures, the Commissioners in their recomputation considered the expert opinion testimony of the shipowners' psychiatrist as evidence of mental disabilities. That testimony was provided in rebuttal to the claimants' expert psychiatric opinion testimony which was previously held inadmissible. 436 F.2d at 1262-1265. Consequently, we view that testimony as irrelevant for the remand proceedings. Further, the reasons that dictated the inadmissibility of claimants' forensic medical expert also require exclusion of the shipowners' similar evidence.
 
 
 64
 WALTER TULGETSKE-Claimant Tulgetske jumped into a lifeboat, but as the ship began to capsize he jumped from it into the water. By his own estimate, he spent about thirty minutes in the water. Upon rescue, he was taken to the hospital, but he was discharged the same day. He complained of being numb and cold. His chest and arms were later noticeably black and blue. The medical testimony is fairly consistent in supporting the physical claims although the degree of disability is disputed. Examination revealed back limitations in the lumbar spine. Accordingly, we affirm the award to Tulgetske to the extent of $9,000 for pain and suffering incurred on the day of the accident.
 
 
 65
 BILLY R. HOLLEY-Claimant Holley was a hero of this accident. From the time of the collision until rescue, he displayed leadership in saving lives and tending to his comrades. Upon rescue, he was seen to be visibly shaking. There is no testimony, even from himself, indicating that he spent any time in the water. At the hospital he was treated for abrasions and dismissed the same day. Black and blue spots on his back and shoulder were noted. Later that day he complained of pain, called a doctor and returned to the hospital where he remained until discharge the next morning. X-rays revealed no broken bones and tests yielded negative results. The medical testimony indicated that Holley suffered a degeneration of the lumbosacral intervertebral disc. We find that the award to claimant Holley should be affirmed to the extent of $15,000 as damages for his pain and suffering on the date of the accident.
 
 
 66
 STANLEY P. MULKA-The Commissioners found a temporary partial mental disability for ten years from the date of the incident for claimant Mulka. The recomputation is apparently based on the testimony of the shipowners' psychiatrist who offered that the incident aggravated pre-existing problems. As stated previously, this testimony will not support an award.
 
 
 67
 RONALD G. PIECHAN-In the case of claimant Piechan, claimant's orthopedic expert diagnosed injuries to his knee joints and right hand. The shipowners' orthopedic expert found a progressive arthritic condition but attributed it to aging. He did not diagnose the alleged right hand or right knee joint injuries. Piechan returned to work on May 24, about two and one-half weeks after the accident. He subsequently complained of pain in the leg and hand areas, sought medical advice on several occasions and received medication. He has not lost any time off from work. We affirm the award to the extent of $3,500 for pain and suffering incurred during the period from incident to judgment.
 
 
 68
 RAPHAEL A. PRZYBYLA-As to claimant Przybyla, the Commissioners found a permanent partial physical disability. The medical testimony indicated that this claimant's injuries include back injuries and conceded that the injuries would result in pain. The medical authorities appeared consistent in their diagnosis of the injuries of this claimant, although they did disagree as to the degree of disability. Claimant had not missed any time from work between incident and judgment for medical reasons and had not sought medical treatment of any kind since the accident. A visit to the U. S. Public Health Service doctor two weeks after the incident was for examination purposes only.
 
 
 69
 We find it reasonably certain that claimant did incur pain and suffering from his physical disabilities during the period from incident to judgment and we therefore affirm the award to him to the extent of $4,000 as damages. As to future pain and suffering, we likewise find it reasonably certain that such pain and suffering may continue to provide some degree of limitation in the future. We therefore affirm the award of damages to the extent of $8,750 on this account.
 
 B. Loss of Life's Pleasures
 
 70
 As stated in our previous opinion, awards for this item are provided ". . . to claimants who, by reason of their injury, are deprived of the opportunity to participate in the normal activities, social, athletic or recreational, in which a person without such injury could engage." 436 F.2d at 1267. With this in mind, we shall consider the individual claims before us.
 
 
 71
 RONALD G. PIECHAN-Testimony has indicated that claimant Piechan suffered injury to his knees and his right hand. We find evidence in the record to support the finding that there was an impact on the normal activities in which claimant may have otherwise had opportunity to participate. We affirm the award to the extent of $3,600 for the period from incident to judgment.
 
 
 72
 RAPHAEL A. PRZYBYLA-Claimant Przybyla was awarded $10,000 for the loss of life's pleasures for the period from incident to judgment and $17,500 for future loss. We conclude that the medical testimony as referenced in our discussion of the pain and suffering awards would support a finding that claimant would experience some reduced ability to participate in normal social, athletic or recreational activities. Accordingly, we affirm the award of damages in the amount of $5,000 for the period from the incident to judgment and of $8,750 for the future loss of life's pleasures.C. Earning Capacity
 
 
 73
 As to the awards for the loss of earning capacity, we find that none of the vacated awards regarding personal injury claims may be reinstated in any amount (See Section II, SHIPOWNERS' APPEAL, part E., pp. 16-17). As stated therein, there is simply no basis for awards to these four claimants (Przybyla, Piechan, Holley and Tulgetske), as there is no evidence supporting a reduced earning capacity proximately related to their experience in the collision.
 
 
 74
 RAPHAEL A. PRZYBYLA-Claimant Przybyla had been sailing for only six months at the time of the accident. For the preceding 18 years, excluding a two-year tour of duty with the U. S. Army, he worked for his father. After the sinking, he returned to his father's business at his father's request and with an increase in salary. On January 1, 1968, claimant's father entered semi-retirement and left actual control of the business to claimant.
 
 
 75
 RONALD G. PIECHAN-Claimant Piechan has continued to work for U. S. Steel since the accident. He had maintained the same position that he held for 12 years prior to the sinking. This is as far as he can go in his profession as long as he remains unlicensed.
 
 
 76
 BILLY R. HOLLEY-Claimant Holley has continued to work for U. S. Steel as a Stokerman, a position he held for the ten years prior to the accident. From August 1965 through 1967 (when this suit was originally filed), he had only one absence due to illness (a pre-existing hemorrhoid condition). He was elected a member of the union negotiating team by his shipmates and has served as the ship's delegate since the accident.
 
 
 77
 WALTER TULGETSKE-Claimant Tulgetske has been sailing with U. S. Steel since the accident. In 1966, he was promoted to Chief Engineer with appropriate increase in earnings.
 
 
 78
 We have previously discussed certain corrections to the death awards for the loss of future earning capacity. The corrections refer to the calculation of an earning capacity base (See Section I, CLAIMANTS' APPEAL, Part C, pp. 11-12). Applying those corrections, we modify the District Court's award to Claimant Barbara Fuhrman so as to read "$139,276." See pp. 27-28.
 
 
 79
 V. REDUCTION OF FUTURE DAMAGES TO PRESENT VALUE
 
 
 80
 The Commissioners discounted the awards of future damages at 4% compounded annually. Our application of their factors provides a significant variance from their reported results, and their meager explanation of the calculations gives us no clue as to the resolution of variance. We are simply unable to reconcile their calculations. We have therefore recalculated the present worth of each future damage award. Our present worth factor source is the Financial Compound Interest and Annuity Tables, Financial Publishing Co., Boston, 1st ed., 1947. As the most appropriate, we have chosen the table located therein at page 639 and entitled "Present Worth of 1 Per Period." The rate is 4%, compounded annually. This table has been chosen since it is based on annual (or periodic) payments which is consistent with the per annum approach used by the Commissioners in determining damages. Our approach has been (1) to calculate the actual annual awards to each claimant and (2) to apply the present worth factor as selected from the table referenced above.
 
 
 81
 Regarding the factors selected from the table, it should be understood that the factor for any given period reflects the value as though a payment were made at the end of that period. Since the theory here is that a payment would be made at the beginning of the period, we have followed the standard actuarial practice of taking the factor for the prior period and adding the whole number 1 to the factor. For example, in looking at the claimant Fuhrman's award for a period of 32 years, we note that the factor would be 17.873551 (rounded to six places) for period 32. However, we have adopted the factor for 31, which is 17.588494, and added the whole number 1 to get a factor of 18.588494. This method, of course, benefits the claimant in that the year in which the award is received is not included in the discounting.
 
 BARBARA J. FUHRMAN
 
 82
 A. Earning Capacity Loss-Mr. Fuhrman had a remaining work-life expectancy of 32 years. An annual earning capacity[25] of $6,158 is used and a 2% factor for personal productivity and general economic growth is applied. For the first 15 years, the family unit has four members and decedent's personal consumption during this period is calculated at 30%. For the next two years the family has three members and a personal consumption rate of 40% is applicable. For the final 15 years just two members remain as the two children reach majority. The personal consumption rate is set at 50%.
 
 
 83
 B. Decedent's Counsel and Guidance to Minor Children:
 
 
 84
 1. James Arthur
 $600 for each of 15 years = $9,000
 Present worth factor for 15 = 11.563123
 (11.563123)($600) = $6,938
2. June Ann
 $600 for each of 17 years = $10,200
 Present worth factor for 17 = 12.652296
 (12.652296)($600) = $ 7,591
3. Total future damages:
 $9,000 k $10,200 = $19,200
 Present worth of $19,200=
 $6,938 k $7,591 = $14,529
 -----------
 -----------
 C. Grand Total Future Damages:
$138,673 k $19,200 = $157,873
Present worth of $157,873=
$84,620 k $14,529 = $ 99,149
 ----------
 ----------
 ----------
 
 ELIZABETH HASKE
 
 85
 A. Earning Capacity Loss-Mr. Haske had a remaining work-life expectancy of 25 years. We have used an annual earning capacity of $8,438 and have adjusted for personal productivity and general economic growth by using a 2% factor. For the first 3 years there are five children and a 10% personal consumption rate for decedent is used; for the next two years, there are four children and a 15% consumption rate is used; the next year, three children and a 22% rate; the next 6 years, there are two children and a 28% rate; the next 3 years, one child and a 40% rate; the last 10 years, no children and a 50% rate is applied.
 
 
 86
 1. 3 years x $8,438 $25,314
 Deduct 10%, personal consumption 2,531
 ----------
 22,783
 Add 15%, fringe benefits 3,417
 ----------
 26,200
 Add 2%, growth 524
 ----------
 Total amount, 3 years 26,724
 Average annual amount for the period 8,908
 ----------
 ----------
2. 2 years x $8,438 16,876
 Deduct 15%, personal consumption 2,531
 ----------
 14,345
 Add 15%, fringe benefits 2,152
 ----------
 16,497
 Add 2%, growth 330
 ----------
 Total amount, 2 years 16,827
 Average annual amount for the period 8,414
 ----------
 ----------
3. 1 year x $8,438 8,438
 Deduct 22%, personal consumption 1,856
 ----------
 6,582
 Add 15%, fringe benefits 987
 ----------
 7,569
 Add 2%, growth 151
 ----------
 Total amount, 1 year 7,720
 Average annual amount for the period 7,720
 ----------
 ----------
4. 6 years x $8,438 50,628
 Deduct 28%, personal consumption 14,176
 ----------
 36,452
 Add 15%, fringe benefits 5,468
 ----------
 41,920
 Add 2%, growth 838
 ----------
 Total amount, 6 years 42,758
 Average annual amount for the period 7,126
 ----------
 ----------
5. 3 years x $8,438 25,314
 Deduct 40%, personal consumption 10,126
 ----------
 15,188
 Add 15%, fringe benefits 2,278
 ----------
 17,466
 Add 2%, growth 349
 ----------
Total amount, 3 years 17,815
 Average annual amount for the period 5,938
 ----------
 ----------
6. 10 years x $8,438 $84,380
 Deduct 50%, personal consumption 42,190
 ----------
 42,190
 Add 15%, fringe benefits 6,328
 ----------
 48,518
 Add 2%, growth 970
 ----------
 Total amount, 10 years 49,488
 Average annual amount for the period 4,949
 ----------
 ----------
7 Expressing the average amounts cumulatively:
 $4,949 for each of the 25 years
 $ 989 for each of the first 15 years
 $1,188 for each of the first 12 years
 $ 594 for each of the first 6 years
 $ 694 for each of the first 5 years
 $ 494 for each of the first 3 years
8. Applying the present worth factors:
 a. $4,949 for each of 25 years = $123,725
 Present worth factor for 25 = 16.246963
 (16.246963)($4,949) = $ 80,406
 b. $989 for each of 15 years = $ 14,835
 Present worth factor for 15 = 11.563123
 (11.563123)($989) = $ 11,436
 c. $1,188 for each of 12 years = $ 14,256
 Present worth factor for 12 = 9.760477
 (9.760477)($1,188) = $ 11,595
 d. $594 for each of 6 years = $ 3,564
 Present worth factor for 6 = 5.451822
 (5.451822)($594) = $ 3,238
 e. $694 for each of 5 years = $ 3,470
 Present worth factor for 5 = 4.629895
 (4.629895)($694) = $ 3,213
 f. $494 for each of 3 years = $ 1,482
 Present worth factor for 3 = 2.886095
 (2.886095)($494) = $ 1,426
 g. Total future damages:
 $123,725 k $14,835 k $14,256 k
 $3,564 k $3,470 k $1,482 = $161,332
 Present worth of $161,332=
 $80,406 k $11,436 k $11,595 k
 $3,238 k $3,213 k $1,426 = 111,314
 ----------
 ----------
 ----------
 B. Decedent's Counsel and Guidance to Minor Children:
1. Gregory Stanley
 $600 for each of 3 years = $1,800
 Present worth factor for 3 = 2.886095
 (2.886095)($600) = $1,732
2. Kenneth Raymond
 $600 for each of 5 years = $ 3,000
 Present worth factor for 5 = 4.629895
 (4.629895)($600) = $ 2,778
3. Alan Mitchell
 $600 for each of 6 years = $ 3,600
 Present worth factor for 6 = 5.451822
 (5.451822)($600) = $ 3,271
4. Brian Keith
 $600 for each of 12 years = $ 7,200
 Present worth factor for 12 = 9.760477
 (9.760477)($600) = $ 5,856
5. Steven Paul
 $600 for each of 15 years = $ 9,000
 Present worth factor for 15 = 11.563123
 (11.563123)($600) = $ 6,938
6. Total future damages: $1,800 k $3,000 k
 $3,600 k $7,200 k $9,000 = $24,600
 Present worth of $24,600=
 $1,732 k $2,778 k $3,271 k
 $5,856 k $6,938 = $20,575
 -----------
 -----------
 C. Grand Total Future Damages:
$161,332 k $24,600 = $185,932
Present worth of $185,932 =
$111,314 k $20,575 = $131,889
 ----------
 ----------
 ----------
 
 
 87
 MARION JONESA. Earning Capacity Loss-Mr. Jones had a remaining work-life expectancy of 4 years. An annual earning capacity of $8,232 is used and we have adjusted for personal productivity and general economic growth by applying a 3% factor. There are four family members throughout this period. A personal consumption rate of 25% is also applied.
 
 
 88
 1. 4 years x $8,232 $32,928
 Deduct 25%, personal consumption 8,232
 ----------
 24,696
 Add 40%, fringe benefits 9,878
 ----------
 35,574
 Add 3%, growth 1,037
 ----------
 Total amount, 4 years 35,611
 Average annual amount for the period 8,903
 ----------
 ----------
2. Applying the present worth factor:
 $8,903 for each of 4 years = $ 35,612
 Present worth factor for 4 = 3.775091
 (3.775091)($8,903) = $ 33,610
 ----------
 ----------
 B. Decedent's Counsel and Guidance to Minor Children:
1. Drew Allen
 $1,000 for each of 10 years = $10,000
 Present worth factor for 10 = 8.435332
 (8.435332)($1,000) = $ 8,435
 However, only $600 was awarded for first 4 years; therefore, = $400:
 $1,000 - $600
 $400 for each of 4 years = $ 1,600
 Present worth factor for 4 = 3.775091
 (3.775091)($400) = $ 1,510
 Total Future Damages:
 $10,000 - $1,600 = $8,400
 Present worth of $8,400=
 $8,435 - $1,510 = $6,925
2. Rose Marie
 $1,000 for each of 13 years = $13,000
 Present worth factor for 13 = 10.385074
 (10.385074)($1,000) = $10,385
 However, only $600 was awarded for first 4 years; therefore, = $400:
 $1,000 - $600
 $400 for each of 4 years = $ 1,600
 Present worth factor for 4 = 3.775091
 (3.775091)($400) = $ 1,510
 Total Future Damages:
 $13,000 - $1,600 = $11,400
 Present worth of $11,400=
 $10,385 - $1,510 = $ 8,875
3. Total Future Damages:
 $8,400 k $11,400 = $19,800
 Present worth of $19,800=
 $6,925 k $8,875 = $15,800
 -----------
 -----------
 C. Grand Total Future Damages:
$35,612 k $19,800 = $55,412
Present worth of $55,412 =
$33,612 k $15,800 = $49,412
 ---------
 ---------
 ---------
BILLY R. HOLLEY (34 year life expectancy)
A. Future Pain and Suffering:
 $500 for each of 34 years = $17,000
 Present worth factor for 34 = 19.147646
 (19.147646)($500) = $ 9,574
 ------------------------------
 ------------------------------
B. Loss of Life's Pleasures:
 $200 for each of 34 years = $ 6,800
 Present worth factor for 34 = 19.147646
 (19.147646)($200) = $ 3,830
 ------------------------------
 ------------------------------
C. Grand Total Future Damages:
 $17,000 k $6,800 = $23,800
 Present worth of $23,800 =
 $9,574 k $3,830 = $13,404
 ------------------------------
 ------------------------------
 ------------------------------
RAPHAEL PRZYBYLA (35 year life expectancy)
A. Future Pain and Suffering:
 $250 for each of 35 years = $ 8,750
 Present worth factor for 35 = 19.411198
 (19.411198)($250) = $ 4,853
 ------------------------------
 ------------------------------
B. Loss of Life's Pleasures:
 $250 for each of 35 years = $ 8,750
 Present worth factor for 35 = 19.411198
 (19.411198)($250) = $ 4,853
 ------------------------------
 ------------------------------
C. Grand Total Future Damages:
 $8,750 k $8,750 = $17,500
 Present worth of $17,500 =
 $4,853 k $4,853 = $ 9,706
 ------------------------------
 ------------------------------
 ------------------------------
RONALD G. PIECHAN (34 year life expectancy)
A. Future Pain and Suffering:
 $300 for each of 34 years = $10,200
 Present worth factor for 34 = 19.147646
 (19.147646)($300) = $ 5,744
 ------------------------------
 ------------------------------
B. Loss of Life's Pleasures:
 $100 for each of 34 years = $ 3,400
 Present worth factor for 34 = 19.147646
 (19.147646)($100) = $ 1,915
 ------------------------------
 ------------------------------
C. Grand Total Future Damages:
 $10,200 k $3,400 = $13,600
 Present worth of $13,600 =
 $5,744 k $1,915 = $ 7,659
 ------------------------------
 ------------------------------
 ------------------------------
MICHAEL IDALSKI (19.2 year life expectancy)
A. Future Pain and Suffering:
 $500 for each of 19.2 years = $ 9,600
 Present worth factor for 19.2 = 13.754225
 (13.754225)($500) = $ 6,877
 ------------------------------
 ------------------------------
 $500 for each of 10 years = $ 5,000
 Present worth factor for 10 = 8.435332
 (8.435332)($500) = $ 4,218
 ------------------------------
 ------------------------------
B. Grand Total Future Damages:
 $9,600 k $5,000 = $14,600
 Present worth of $14,600=
 $6,877 k $4,218 = $11,095
 ------------------------------
 ------------------------------
 ------------------------------
WALTER TULGETSKE
A. Future Pain and Suffering:
 $500 for each of 25.2 years = $12,600
 Present worth factor for 25.2 = 16.321986
 (16.321986)($500) = $ 8,161
 ------------------------------
 ------------------------------
 $500 for each of 15 years = $ 7,500
 Present worth factor for 15 = 11.563123
 (11.563123)($500) = $ 5,782
 ------------------------------
 ------------------------------
 $500 for each of 10 years = $ 5,000
 Present worth factor for 10 = 8.435332
 (8.435332)($500) = $ 4,218
 ------------------------------
 ------------------------------
 Total Future Damages:
 $12,600 k $7,500 k $5,000 = $25,100
 Present worth of $25,100=
 $8,161 k $5,782 k $4,218 = $18,161
B. Loss of Life's Pleasures:
 $500 for each of 15 years = $ 7,500
 Present worth factor for 15 = 11.563123
 (11.563123)($500) = $ 5,782
 ------------------------------
 ------------------------------
 $500 for each of 10 years = $ 5,000
 Present worth factor for 10 = 8.435332
 (8.435332)($500) = $ 4,218
 ------------------------------
 ------------------------------
 $500 for each of 5 years = $ 2,500
 Present worth factor for 5 = 4.629895
 (4.629895)($500) = $ 2,315
 ------------------------------
 ------------------------------
 Total Future Damages:
 $7,500 k $5,000 k $2,500 = $15,000
 Present worth of $15,000=
 $5,782 k $4,218 k $2,315 = $12,315
C. Grand Total Future Damages:
 $25,100 k $15,000 = $40,100
 Present worth of $40,100=
 $18,161 k $12,315 = $30,476
 ------------------------------
 ------------------------------
 ------------------------------
 
 VI. CONCLUSION
 
 89
 The awards of the District Court are modified as set forth in this opinion and are summarized as follows:
 
 
 90
 Damages
 ---------------------------
 Future Other Total
 -------- ------- --------
Barbara Fuhrman, Administratrix of the Estate of $ 99,149 $40,127 $139,276
 Arthur Fuhrman, Deceased
Elizabeth Haske, Administratrix of the Estate of 131,889 59,166 191,055
 Stanley Haske, Deceased
Marion Jones, Administratrix of the Estate of 49,410 46,710 96,120
 Eugene Jones, Deceased
Jerome Kierzek -- 14,000 14,000
Stanley Mulka -- 14,000 14,000
Raphael Przybyla 9,706 19,000 28,706
Ronald Piechan 7,659 17,000 24,659
Billy Holley 13,404 29,000 42,404
Michael Idalski 11,095 14,000 25,095
Walter Tulgetske 30,476 37,000 67,476
 
 
 91
 Interest shall attach to the awards as of the date of the original District Court judgment, May 7, 1969. See Swartzbaugh Manufacturing Co. v. United States, 289 F.2d 81, 85 (6th Cir. 1961).
 
 
 
 [1]
 The facts are detailed in Petition of Den Norske Amerikalinje A/S, 276 F.Supp. 163 (N.D. Ohio, 1967)
 
 
 [2]
 Barbara Fuhrman, Administratrix of the Estate of Arthur Fuhrman, deceased
 Elizabeth Haske, Administratrix of the Estate of Stanley Haske, deceased
 Marion Jones, Administratrix of the Estate of Eugene Jones, deceased
 Jerome Kierzek
 Stanley Mulka
 Raphael Przybyla
 Ronald Piechan
 Billy Holley
 Michael Idalski
 Walter Tulgetske
 Original Award Recomputation
-------------- -------------
 $338,095.00 $137,801.00
 308,702.00 182,129.00
 149,414.00 90,738.00
 88,860.00 14,000.00
 92,740.00 14,525.00
 196,288.00 69,327.00
 82,160.00 37,065.00
 251,976.00 92,329.00
 89,420.00 32,670.60
 195,888.00 92,733.10
 
 
 [3]
 See, generally, 1B Moore's Federal Practice Secs. 0.404, 0.404 (2d ed. 1965)
 
 
 [4]
 White v. Higgins, 116 F.2d 312 (1st Cir. 1940)
 
 
 [5]
 See, generally, 1B Moore's Federal Practice Sec. 0.404 (2d ed. 1965)
 
 
 [6]
 United States of America and Interstate Commerce Commission v. United States Smelting, Refining and Mining Co., 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950)
 
 
 [7]
 436 F.2d at 1275
 
 
 [8]
 "The only apparent basis for such assumption on the part of the Commissioners was the testimony of expert actuaries and economists which tended generally to show that all wages tend to increase from 5% to 6% annually as the result of increased productivity and inflation. However, in making the assumption, the Commissioners apparently ignored the documentary evidence in the record in the form of the collective bargaining agreements under which the decedents would have continued to have been employed had they lived. Those agreements showed that the annual wage increase which the hourly employees would have been entitled to receive in the four years from date of death to the date of judgment approximated 1 1/2% per annum, not the 4% to 5% per annum increase found by the Commissioners." 436 F.2d at 1275
 
 
 [9]
 See also, 436 F.2d at 1266, 1267, 1268 and 1270
 
 
 [10]
 In regard to the exclusion, the claimants state, "Although it is not stated in this Court's opinion, it is assumed that the reason lay in the fact that the questions to the psychiatrist were not posed as hypothetical questions in accordance with the practice in the state courts of Ohio." Claimants' brief, p. 16. If this were the case, this Court would indeed have remanded with instructions to retry the case; this time with questions posed in the proper form. However, the basis for the exclusion is clearly elucidated in the opinion, 436 F.2d at 1262-1265
 
 
 [11]
 On remand, the District Court followed this Court's instructions with respect to the exclusion of the psychiatric testimony and refused to reopen the case for further proof. We note that the claimants' proffer was virtually the same testimony of the psychiatrist presented in the original trial. On this narrow ground alone, this Court would be justified in rejecting the claimants' argument that they should be able to retry their case
 
 
 [12]
 The Cedarville sank on May 7, 1965. This Court's opinion in the prior appeal was filed on December 23, 1970. Thus, there would be at least a 5 1/2 year period between the injury and the "treatment."
 
 
 [13]
 It would seem that claimants had ample opportunity during the four year history of the trial to introduce all admissible testimony
 
 
 [14]
 Welfare benefits include life insurance, sickness and accident insurance, and hospital and physician services
 
 
 [15]
 One of the few items claimants accept is the figure approved for the decedents' conscious pain and suffering. We previously stated: "The awards for pain and suffering in the death cases will not be disturbed." 436 F.2d at 1276
 
 
 [16]
 The gross earnings of the decedents in the years prior to 1965 were as follows:
 FUHRMAN HASKE JONES
 1961 $4,632 $8,156 $7,999
 1962 5,014 8,050 7,412
 1963 7,044 8,213 8,650
 1964 5,889 7,856 7,428
4-yr. avg.: 5,645 8,069 7,872
 
 
 [17]
 As it turns out, only Fuhrman had an average earning less than the year immediately preceding the incident. See footnote 16, supra
 
 
 [18]
 Alexandervich v. Gallagher Bros. Sand & Gravel Corp., 298 F.2d 918 (2d Cir. 1961), cited by claimants, does not support their proposed method of calculating earnings
 
 
 [19]
 Claimants intimate that the shipowners' failure to voluntarily pay maintenance and cure caused the return to work by some claimants. This is unsupported by the record
 
 
 [20]
 The shipowners support their argument in part with the following chart:
 Earnings lost 0
 Days lost from work for causally related complaints after June 3, 1965 14
 Days of hospitalization 1
 Surgery for causally related complaints 0
 Number of claimants seeking medical treatment after June 1, 1965 (for 2
 claimed causally related complaints)
 Number seeking psychiatric treatment 0
 Total of medical and psychiatric expenses 0
 Job advancements 5
 Job demotions 0
 
 
 [21]
 Our previous opinion expressly noted the failure of the Commissioners to satisfactorily set forth the basis of their awards. 436 F.2d at 1261-1262. We find, however, that the recomputation for this award and the others provides little more insight into the conclusary determinations as made by the Commissioners. Not only do we fail to find precise support for the present pain and suffering awards but we fail to find any explanation for the divergence from our previous direction
 
 
 [22]
 Since July 1, 1966, the Federal Rules of Civil Procedure have been expressly applicable to admiralty cases
 
 
 [23]
 A partial collection of cases that have modified awards in admiralty and entered a final order thereon is as follows: Cates v. United States, 451 F.2d 411 (5th Cir. 1971); Alexandervich v. Gallagher Bros. Sand & Gravel Corp., 298 F.2d 918 (2d Cir. 1961); Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583 (2d Cir. 1961); Texas Co. v. R. O'Brien & Co., 242 F.2d 526 (1st Cir. 1957); Imperial Oil Ltd. v. Drlik, 234 F.2d 4 (6th Cir. 1956); Menefee v. W. R. Chamberlin Co., 183 F.2d 720 (9th Cir. 1950)
 
 
 [24]
 Neither Idalski nor any of the other claimants were injured by the impact of the collision
 
 
 [25]
 In calculating the annual earning capacity for the three death claimants, the Commissioners have applied the 1 1/2% annual growth rate for each of the years 1965-1969 to the 1964 gross earnings of each decedent (see footnote 16, supra). The year 1969 marks the date of the original judgment and thus is the benchmark for calculating future earnings
 
 
 [1]
 15 years x $6,158 $92,370
 Deduct 30%, personal consumption 27,711
 -----------
 64,659
 Add 15%, fringe benefits 9,699
 -----------
 74,358
 Add 2%, growth 1,487
 -----------
 Total amount, 15 years 75,845
 Average annual amount for the period 5,056
 -----------
 -----------
2. 2 years x $6,158 12,316
 Deduct 40%, personal consumption 4,926
 -----------
 7,390
 Add 15%, fringe benefits 1,108
 -----------
 8,498
 Add 2%, growth 170
 -----------
 Total amount, 2 years 8,668
 Average annual amount for the period 4,334
 -----------
 -----------
3. 15 years x $6,158 92,370
 Deduct 50%, personal consumption 46,185
 -----------
 46,185
 Add 15%, fringe benefits 6,928
 -----------
 53,113
 Add 2%, growth 1,062
 -----------
 Total amount, 15 years 54,175
 Average annual amount for the period 3,611
 -----------
 -----------
4. Expressing the average amounts cumulatively:
 $3,611 for each of the 32 years
 $ 723 for each of the first 17 years
 $ 722 for each of the first 15 years
5. Applying the present worth factors:
 a. $3,611 for each of 32 years = $115,552
 Present worth factor for 32 = 18.588494
 (18.588494) ($3,611) = $ 67,123
 b. $723 for each of 17 years = $ 12,291
 Present worth factor for 17 = 12.652296
 (12.652296) ($723) = $ 9,148
 c. $722 for each of 15 years = $10,830
 Present worth factor for 15 = 11.563123
 (11.563123)($722) = $ 8,349
 d. Total future damages:
 $115,522 k $12,291 k $10,830 = $138,673
 Present worth of $138,673 =
 $67,123 k $9,148 k $8,349 = $ 84,620
 -----------
 -----------