812 F.2d 1408
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TAYLOR & GASKIN, INC., Plaintiff-Appellee,
v.
CHRIS-CRAFT INDUSTRIES, INC., Defendant-Appellant.
 No. 86-1073.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1987.
 
 Before ENGEL, KRUPANSKY and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is Chris-Craft Industries' second appeal from a refusal by the district court to award consequential damages on account of Taylor & Gaskin's breach of the warranties it gave Chris-Craft in connection with the latter company's purchase of certain marine gasoline tanks. Our previous decision, reported at 732 F.2d 1273, held that "the district court erred as a matter of law when it found that Taylor & Gaskin completely breached its express and implied warranties of merchantability, but denied Chris-Craft its consequential damages." Id. at 1279. We remanded the case for a determination of the exact amount of such damages. Concluding, on remand, that Chris-Craft could not recover any consequential damages not affirmatively shown to have been caused solely by the breach of warranty, to the exclusion of any contribution by Chris-Craft, the district court again denied Chris-Craft its consequential damages. We shall again reverse; the circumstances of this case require that such damages be awarded without apportionment for contributory fault on the part of Chris-Craft.
 
 
 2
 As indicated in our earlier opinion, Chris-Craft, a manufacturer of power boats, purchased the gasoline tanks from Taylor & Gaskin for the purpose--as Taylor & Gaskin knew--of installing them in Chris-Craft boats. Taylor & Gaskin elected to give the tanks only one coat of paint, and by Taylor & Gaskin's own estimate (not communicated to Chris-Craft) the tanks as so painted would not have lasted over two years. The trial court credited the testimony of Chris-Craft's expert witness, whose evidence established that the tanks would begin rusting at one to two months and would rust through at two years. No reliable corrosion test was available at the time of the purchase, and Chris-Craft's failure to test for corrosion resistance was not unreasonable. Taylor & Gaskin had warranted that the tanks would be of merchantable quality, but "the tanks were not merchantable at the time that they left the control of the manufacturer [Taylor & Gaskin]...." The tanks were, in a word, "worthless."
 
 
 3
 After the boats in which Chris-Craft installed the painted Taylor & Gaskin tanks reached the market, Chris-Craft received numerous customer complaints regarding corrosion. The immediate cause of at least two of the tank failures proved to be faulty welding or faulty installation by Chris-Craft. It was the trial court's view that some unquantified portion of the total corrosion problem was attributable to Chris-Craft's own selection of a painted tank, Chris-Craft's installation design, and Chris-Craft's decision to locate the tank in the stern of the boat, a "unique placement" that exposed the tanks to bilge water.
 
 
 4
 Chris-Craft decided to recall all of the boats with the painted tanks in order to replace the tanks with conventional hot-dipped galvanized units. Counsel for Taylor & Gaskin conceded, in oral argument on the present appeal, that the cost of the recall would have been the same whether or not Chris-Craft had been negligent. In a post-argument brief Taylor & Gaskin argues that there would have been no recall at all absent negligence on the part of Chris-Craft, because the tanks would never have been selected by Chris-Craft in the first instance.
 
 
 5
 The trial court originally held that Taylor & Gaskin could not be required to pay the costs of the recall, despite the company's breach of its warranties, because payment of such costs by Taylor & Gaskin had not been within the reasonable contemplation of the parties, and because (the rusting having been attributable in part to Chris-Craft's own installation and design) the recall campaign had not been shown to have been the proximate result of Taylor & Gaskin's breach of warranty.
 
 
 6
 In reversing the district court's judgment, this court held that the possibility that the worthless tanks would have to be replaced was foreseeable as a matter of law. Notwithstanding that the immediate cause of the failure of at least two of the tanks was faulty installation by Chris-Craft, and notwithstanding the trial court's findings on the contributory role played by Chris-Craft's faulty design, this court also held that the recall was the proximate result of Taylor & Gaskin's breach of warranties. It was on that basis that the case was remanded for the determination of consequential damages, with the costs on appeal being taxed to Taylor & Gaskin.
 
 
 7
 Judge Jones concurred in the result, but not in the opinion; he argued very forcefully, in a separate concurring opinion, that Chris-Craft was entitled to recover only that portion of the recall costs not attributable in some measure to its own negligence. The concurrence also suggested, without further explaination, that the majority opinion need not necessarily be read as holding that Chris-Craft could recover the entire cost of its recall campaign.
 
 
 8
 On remand the trial court made a preliminary ruling that the determination of the amount of Chris-Craft's consequential damages should proceed without regard to any apportionment. Shortly thereafter, however, the trial judge changed his mind and "corrected" his interpretation of this court's opinion, apparently accepting Judge Jones's view that the opinion could and should be read as permitting Chris-Craft to recover only such recall costs as Chris-Craft could affirmatively show were in no way attributable to its own faulty installation or location of the tanks. When Chris-Craft's evidence failed to negate the possibility that all of the tanks would have had to be replaced even if they had been of merchantable quality prior to installation, the trial court entered a supplemental judgment holding that Chris-Craft could recover no consequential damages.
 
 
 9
 If the trial court had been called upon to decide that question as a matter of first impression, without having the benefit of any statutory or decisional law from Michigan and without being constrained by this court's prior decision, several reasonable options would have been open. Where a vendor's breach of warranty has "caused" the purchaser to incur an expense that the purchaser cannot prove he would not have had to incur anyway, it would not shock the conscience to say that the purchaser must bear the entire expense. Neither would it be unreasonable to say, in such circumstances, that the expense ought to be borne by the vendor, or that the expense ought to be divided between the parties in some way. But the trial court was not writing on a clean slate here, and we believe that the correct interpretation of this court's earlier opinion is that consequential damages proximately caused by the vendor's breach of express and implied warranties of merchantability are properly charged to the vendor, under Michigan law, whether or not such damages may also be attributed to the purchaser's own negligence. Knowing, as it did, that the trial court had found the rusting problem attributable to Chris-Craft's installation and design, as well as to Taylor & Gaskin's breach of warranties, this court would not have held that the recall cost was the proximate result of the breach of warranties, and would not have directed the trial court to determine the quantum of consequential damages resulting from such breach, if it had thought that Michigan law precluded recovery of any consequential damages attributable both to the purchaser's negligence and to the vendor's breach of warranty.
 
 
 10
 The law of this case required that Chris-Craft be awarded its recall expenses without apportionment. "It is clear when a case has been remanded, the trial court must upon the remand proceed in accordance with the mandate and law of the case as established by the appellate court." Petition of the United States Steel Corporation, 479 F.2d 489, 493 (6th Cir.), cert. denied, 414 U.S. 859 (1973). "When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court bind the lower court." Insurance Group Committee v. Denver & R.G.W.R. Co., 329 U.S. 607, 612 (1947). Compliance with our original mandate was obligatory, not discretionary.
 
 
 11
 Taylor & Gaskin cites no intervening Michigan authority which might suggest that our original opinion was erroneous, and prior case law (if that were relevant at this point) suggests it was not. In addition to the authorities cited in the original opinion, see Upjohn Co. v. Rachelle Laboratories, 661 F.2d 1105 (6th Cir.1981) (under Michigan law defendant not entitled to contributory negligence instruction in a case for breach of implied warranty of merchantability) and In Re: Certified Questions from the United States Court of Appeals for the Sixth Circuit, 416 Mich. 558, 331 N.W.2d 456 (1982) (implying that Michigan's statutory law on comparative negligence does not apply in a breach of warranty case not coming within the statutory definition of a "products liability action.")
 
 
 12
 The supplemental judgment of the district court is REVERSED, and the case is REMANDED for the determination and award of consequential damages without apportionment.