76 F.3d 379
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marshall MARTIN, Jr., On Behalf of Himself and all other
Employees of the Ohio Turnpike Commission
similarly situated, et al., Plaintiffs-Appellants.
v.
OHIO TURNPIKE COMMISSION, Defendant-Appellee.
 No. 94-3759.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1995.
 
 Before: MERRITT, Chief Circuit Judge; RYAN, Circuit Judge; and CLELAND, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The plaintiffs, a group of highway maintenance workers employed by the defendant, the Ohio Turnpike Commission, seek overtime compensation under the authority of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., for time that they were "on call" while away from the work site. In a previous appeal, we affirmed a grant of summary judgment to the Turnpike on claims arising under pre-1989 collective bargaining agreement policies, but we remanded the claims arising from later policies. On remand, the district court again granted summary judgment in favor of the Turnpike. Plaintiffs now appeal from the district court's grant of summary judgment on the later claims. The plaintiffs primarily contend that the district court erred in restricting its inquiry to whether the 1989 and 1992 collective bargaining agreements imposed a greater burden on the employees during "on-call" time than did the pre-1989 collective bargaining agreement. We disagree. The district court correctly applied the law of the case, and we therefore affirm.
 
 I.
 
 2
 The plaintiffs are maintenance workers employed by the Turnpike to provide scheduled road maintenance as well as unscheduled emergency services when inclement weather or motor vehicle accidents create the need for their services. They seek compensation for time spent "on-call," alleging that the Turnpike willfully violated the Fair Labor Standards Act by failing to pay overtime wages for time that the plaintiffs were "on-call"; that is, when the employees were not actually working but were on notice that they could be summoned to work momentarily. The FLSA mandates that employees are to be compensated at one and one-half times their regular rate for hours "worked" over forty in the work week. 29 U.S.C. §§ 207(a), 216(b). Under certain circumstances, time waiting for recall to work constitutes "time worked." Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944); Skidmore v. Swift & Co., 323 U.S. 134, 136 (1944). Essentially, employees must be paid if the on-call requirements imposed by the employer are so onerous that the employees cannot effectively use their free time for personal pursuits (measured in terms of the degree of "burdensomeness" of the on-call policy), otherwise characterized in the case law as time spent predominantly for the benefit of the employer.
 
 
 3
 The on-call requirements imposed by the Turnpike may be found in the governing collective bargaining agreement. During the years for which plaintiffs seek unpaid wages for on-call time, three different collective bargaining agreements (the pre-1989 CBA, the 1989 CBA, and the 1992 CBA) were in effect, successively. These three agreements allegedly contain different on-call policies.
 
 
 4
 This court previously affirmed summary judgment as to claims for compensation accruing under the pre-1989 CBA, and remanded for further proceedings on the 1989 and 1992 CBA claims. See Martin v. Ohio Turnpike Comm'n, 968 F.2d 606 (6th Cir.1992), cert. denied, 113 S.Ct. 979 (1993). [Hereinafter, Martin I.]
 
 
 5
 On the remand of the 1989 and 1992 claims, the district court restricted its evaluation to whether the 1989 and 1992 policies were more burdensome than the pre-1989 policies. The district court concluded that Martin I was binding as the law of the case if there were no factual changes between the two periods. The district court held that the burden imposed upon on-call workers did not increase during the period governed by the 1989 and 1992 collective bargaining agreements. Indeed, the court found that the plaintiffs did not "even allege that they [were] called out more often or in a more burdensome manner [after 1989] than [they were] before the 1989 CBA went into effect." Martin v. Ohio Turnpike Comm'n, No. 87-1548, slip op. at 6 (N.D.Oh. June 16, 1994). Rather, the 1989 and 1992 CBAs formalized policies that had been followed unofficially during the pre-1989 period and adopted changes with effects that were neutral, de minimis, or beneficial to the employees. The district court found no evidence of additional burdensomeness in the 1989 and 1992 CBAs and refused to consider additional evidence of the unchanged burdensomeness. That is, the court declined to re-evaluate the burdensomeness for the unchanged on-call policies despite plaintiffs' new attempts to prove that the same policies imposed a degree of burdensomeness that, contrary to the Martin I opinion, qualified the employees for overtime compensation under FLSA.
 
 
 6
 Plaintiffs argue that the scope of the mandate handed down by this court in Martin I only barred reconsideration of claims arising during the pre-1989 period, the period that Martin I specifically addressed. Plaintiffs contend that the district court was required to evaluate independently all the evidence introduced by the plaintiffs on remand, including averments and theories that could have been introduced with regard to the pre-1989 period; they maintain that it was error for the trial court to restrict itself to considering whether the burden of the on-call policies implemented after March 11, 1989 was more onerous than the burden imposed before that date.
 
 
 7
 At issue is whether the district court erred in refusing to consider two new types of evidence: (1) an affidavit submitted by an expert stating that his opinion was that "to a psychological probability, the psychological burden of the employer's on-call policy ... is psychologically so onerous that the policy effectively precludes the employees' use of that period of leisure time for personal pursuits"; and (2) an analysis of on-call time that highlights two categories of time of heightened burdensomeness. The plaintiffs assert that the district court should have considered all the evidence of burdensomeness during the 1989 and 1992 periods, even if the burden had not increased since the pre-1989 period addressed by the Martin I court but rather was just averred to and analyzed differently.
 
 
 8
 Whether Martin I settled the issue of burdensomeness on the facts of the post-1989 on-call policy is a question of law. Therefore, the court applies a de novo standard of review. See Anthony v. Baker, 955 F.2d 1395, 1397 (10th Cir.1992).
 
 II.
 
 9
 On remand, a trial court must "proceed in accordance with the mandate and law of the case as established by the appellate court." Petition of United States Steel Corp., 479 F.2d 489, 493 (6th Cir.), cert. denied, 414 U.S. 859 (1973). The "law of the case" doctrine dictates that findings made at one point in the litigation become binding precedent to be followed in successive stages of the same litigation. United States v. Moored, 38 F.3d 1419, 1421 (6th Cir.1994); NAACP, Detroit Branch v. Detroit Police Officers Ass'n, 676 F.Supp. 790, 791 (E.D.Mich.1988). This doctrine, and the complementary "mandate rule," which requires lower courts to adhere to the commands of a superior court, protect against the relitigation of settled issues, preserve the finality of judgments, and ensure the obedience of inferior courts for the decision of superior courts. Id. A trial court must " 'implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.' " Moored, 38 F.3d at 1421 (quoting United States v. Kikumura, 947 F.2d 72, 76 (3d cir.1991)).
 
 
 10
 Once an issue has been decided, the law of the case doctrine permits issues to be reopened only where there is "substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice." Moored, 38 F.3d at 1421 (internal quotations and citations omitted).
 
 
 11
 A trial court, however, is free on remand "to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled" by the appellate court's decision. Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 950 (3d Cir.1985). Indeed, it is error for the trial court to refuse to consider issues properly before it that are not foreclosed by the law of the case.
 
 
 12
 Thus, the lower court's latitude in accepting additional evidence and legal theories on remand in the instant case is defined by the scope of the appellate court's mandate as set forth in Martin I.
 
 III.
 
 13
 Martin I affirmed summary judgment on the pre-1989 claims and, in so ruling, the court discussed the material facts and applicable rules of law. The court stated:
 
 
 14
 We agree that the plaintiffs' affidavits and depositions are sufficient to establish an issue as to whether the on-call policy has changed the plaintiffs' use of their free time....
 
 
 15
 However, we find that the plaintiffs' evidence does not establish a genuine issue of material fact. The fact that some of the plaintiffs' activities have been affected by the policy is not sufficient to make the on-call time compensable. The plaintiffs must show that the policy is so onerous as to prevent them from effectively using their free time for personal pursuits. That some of the plaintiffs' personal activities may be affected is not enough. The plaintiffs must establish the type of severe restrictions at issue in Cross[2] and Renfro.[3]
 
 
 16
 Martin I, 968 F.2d at 611 (footnotes added). The Martin I court determined that the burdens imposed on the employees by the pre-1989 on-call policies did not so restrict the employees as to prevent them from using their on-call time for personal pursuits. The law of the case doctrine prevents this issue from being reopened in this litigation; plaintiffs are not entitled to continuously substitute theories and supplement evidence after unfavorable resolutions on appeal.
 
 
 17
 The district court's mandate was narrowly restricted to evaluating the 1989 and 1992 rules to determine whether they created a greater burden than the pre-1989 rules. Martin I held that the policy in place during the pre-1989 period was insufficiently onerous as a matter of law to establish compensability under the FLSA. Because the appellate court ruled on this issue, the district court was barred from reconsidering the issue with regard to the post-1989 claims. The scope of its mandate was to determine whether the on-call policies contained in the 1989 and 1992 CBAs were more severe than the previous policies and, if so, whether they were so much more onerous that compensability could be established. The language of the appellate court's remand of the post-1989 claims, as well as the surrounding context, delineates the scope of the trial court's mandate on remand:
 
 
 18
 Finally, we must consider whether the district court properly granted summary judgment against the plaintiffs' claim in its entirety. The Turnpike had limited its motion for summary judgment to the period before March 11, 1989, the date a new collective bargaining agreement went into effect. The new agreement changed some of the features of the on-call policy.
 
 
 19
 At oral argument, the Turnpike conceded that the grant of summary judgment covered only the period before March 11, 1989. Accordingly, the portion of the plaintiffs' claim pertaining to the period after that date is REMANDED to the district court for further proceedings.
 
 
 20
 Martin I, 968 F.2d at 612 (emphasis added). Remand was required only because the 1989 and 1992 CBAs allegedly changed some of the features of the on-call policy at issue in the pre-1989 period, and because the defendant conceded that the grant of summary judgment covered only the pre-1989 period. Thus, the district court's mandate was restricted to examination of the changed features.
 
 
 21
 Rather than demonstrating that the policies had changed to become more severe, plaintiffs attempted, on remand, to demonstrate that, contrary to the appellate court's ruling, the unchanged policies did impose a degree of burden that justified compensation. Plaintiffs found an expert to assert this legal conclusion and restructured their presentation of the policies to support this conclusion.
 
 
 22
 On remand, the district court evaluated the issues before it and concluded that no greater burden was imposed by the 1989 and 1992 CBAs. The district court properly refused to consider the expert affidavit and the reconstructed theory of burdensomeness or to reopen the issue of compensability on the same facts as were addressed in Martin I, citing law of the case and limited mandate. The district court concluded that there had been no showing that the burden of on-call time had in any way increased since the adoption of the 1989 CBA. Indeed, the policies are almost identical in material effect. At the most, the later CBA provisions may punish employees slightly more severely for violating the (unchanged) on-call policies. Even if the plaintiffs adequately demonstrated that employees violating the on-call policies were subject to slightly more severe discipline, this would not demonstrate that plaintiffs' activities were in any way more constrained while on-call. We find no error.
 
 IV.
 
 23
 The law of the case established in Martin I prevented the district court from reexamining the issue of compensability on the same facts as existed prior to 1989. Even reading all the facts in the light most favorable to the plaintiff, there was no evidence that the burden in the post-1989 period was appreciably more burdensome and, therefore, no support for a finding of compensability. We therefore AFFIRM.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Cross v. Arkansas Forestry Comm'n, 938 F.2d 912 (8th Cir.1991)
 
 
 [3]
 Renfro v. City of Emporia, 948 F.2d 1529 (10th Cir.1991)